# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-00542-SCT

*VESSIE LYNN LEE*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2003 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW WARREN KITCHENS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | RICHARD D. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/07/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**DICKINSON, JUSTICE, FOR THE COURT**:

¶1.     The Madison County Grand Jury indicted Vessie Lynn Lee for statutory rape (two counts), sexual battery (four counts), and gratification of lust (four counts) for engaging in sexual activities with a minor during a nine-month period which began when the child was twelve years old.  The jury found Lee guilty, and we referred his appeal to the Court of Appeals, which affirmed the conviction.  Although we agree with the Court of Appeals' disposition of this case, we granted certiorari to clear up an apparent inconsistency in our precedent.  The two issues presented for our review are whether an amendment to Lee's

indictment was proper, and whether the trial court erred in refusing to allow a defense witness to impeach a prosecution witness.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     The twelve-year-old female victim lived down the street from Lee in a subdivision in Madison, Mississippi.  She knew the Lee family and routinely baby-sat for Lee's small children.  She testified that around August 2001, Lee began approaching her in a sexual manner.  Lee's advances were initially limited to forced touching, but they soon progressed to forced oral sex and, eventually, non-consensual sexual intercourse.  The victim testified that after each encounter, Lee told her not to tell anyone what happened, warning her that no one would believe her and that he would kill himself if she said anything.  These events occurred over a nine month period, concluding in February 2002, when the victim finally told her track coach about the sexual assaults.  Her family informed the police, and Lee was arrested.

¶3.     After a five-day trial, a jury found Lee guilty and convicted him on all counts.[1]  The trial court fixed Lee's punishment at two life sentences, four thirty-year sentences, and three fifteen-year sentences.  The Court of Appeals affirmed the convictions and sentences.  *Lee v. State*, No. 2004-KA-00542-COA, 2005 Miss. App. LEXIS 918 (Miss. Ct. App. Nov. 22, 2005).  We thereafter granted Lee's Petition for Certiorari Review.

## DISCUSSION

### I.

---

[1] The trial court granted the State's Motion to Nolle Prosequi Count VIII of the indictment (one of the four counts of gratification of lust), finding it was a lesser included offense of Count V (one of the four counts of sexual battery).

¶4. Lee argues the trial court erroneously allowed the State to amend the indictment on the morning of trial. Counts III through VI of the original indictment alleged four separate instances of sexual battery with a child in violation of subsection (1)(d) of Miss. Code Ann. Section 97-3-95. However, each of these counts included the phrase "without her consent," an element of subsection (1)(a). Four days before trial, Lee filed a motion to quash counts III through VI of the indictment, claiming they tracked the language of both subsections (1)(a) and (1)(d), and thus did not provide him sufficient notice of the charged crime. The statute provides, in relevant part:

> (1) A person is guilty of sexual battery if he or she engages in sexual penetration with:
>
> (a) *Another person without his or her consent*;
> (b) A mentally defective, mentally incapacitated or physically helpless person;
> (c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or
> (d) *A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.*

Miss. Code Ann. § 97-3-95 (emphasis added).

¶5. The Court of Appeals properly held that the trial court did not commit error by allowing the State to amend the indictment and remove the phrase "without her consent." However, this Court has followed two lines of analysis when addressing whether the removal of excess words in an indictment is proper.

¶6. Our precedent establishes that "surplusage" in an indictment may be removed without prejudice to the defendant. *See, e.g., Mixon v. State*, 921 So. 2d 275, 279-80 (Miss. 2005); *Schloder v. State,* 310 So. 2d 721, 723-24 (Miss. 1975); *Sullivan v. Cook*, 218 So. 2d 879,

3

880-81 (Miss. 1969). However, in *Richmond v. State*, 751 So. 2d 1038, 1046 (Miss. 1999), this Court held that the State was required to *prove* an unnecessary element alleged in the indictment. We find it appropriate to now clarify our holding in *Richmond* so that it is not misread as inconsistent[2] with our precedent concerning motions to amend indictments to remove surplusage.

## II.

¶7.    Defendants in criminal cases have a constitutionally protected right to be informed of the nature and cause of charges brought against them. U.S. Const. amend. VI & XIV; Miss. Const. art. 3, § 26. *See also Jones v. State*, 856 So. 2d 285, 289 (Miss. 2003). This requires that an indictment describe with precision and certainty each element of the offense charged. *Peterson v. State*, 671 So. 2d 647, 653 (Miss. 1996) (citing *Love v. State*, 211 Miss. 606, 611, 52 So. 2d 470, 472 (1951)).

¶8.    Lee directs us to our language in *Richmond,* whereby we held that "the State handicapped itself through th[e] indictment by adding an unnecessary element of proof." 751 So. 2d at 1046. Thus, Lee argues, the State should be precluded from amending his indictment. Although this Court's holding in *Richmond* seems, at first blush, inconsistent with other cases, cited *infra*, where we held that mere surplusage may be removed from an indictment by amendment, Lee's case is easily distinguishable. We shall first address the holding in *Richmond*.

---

[2] These inconsistencies are discussed in a dissent in *Cooley v. State*, 803 So. 2d 485, 490-91 (Miss. Ct. App. 2001) (Southwick, P.J., dissenting).

4

¶9. In *Richmond*, the defendant was charged with motor vehicle theft. *Id.* at 1042. The indictment included a dollar amount for the vehicle, which was not a necessary element under the statute. *Id.* This Court stated that "[h]aving specifically informed Richmond of the offense charged, as well as the detailed code section number, the State handicapped itself through this indictment by adding an unnecessary element of proof." *Id.* at 1046. Lee interprets this language to mean that any indictment which includes an unnecessary element cannot be amended, and the State is required, as a matter of law, to prove the unnecessary element. However, Lee completely misreads the import of our holding in *Richmond*.

¶10. Richmond was clearly on notice of the charge against him. The indictment charged him with motor vehicle theft under Miss. Code Ann. Section 97-17-42, a crime which does not require proof of any specific value. *Id.* at 1042. Nevertheless, the indictment alleged that the vehicle taken by Richmond had a "total value of more than $250.00." *Id.* Prior to trial, the State moved to amend the indictment by removing the language relating to the value of the automobile. *Id.* Richmond objected and moved to quash. *Id.* at 1042-43. Referring to the requested amendment as "substantive," the trial court refused to allow the State to amend. *Id.* at 1046. The trial went forward, and the State presented proof that the value of the vehicle exceeded $250.00. *Id.* at 1049. Richmond was convicted of motor vehicle theft. *Id.* at 1050.

¶11. The trial court in *Richmond* would have committed no abuse of discretion had it found that the language related to value was mere surplusage and allowed the State to amend the indictment by removing the language. However, the trial court refused to allow the State to amend and required the State to prove not only the elements of motor vehicle theft, but

5

also the additional element of value. *Id.* at 1046.  During the discussion of jury instructions,

the prosecutor succinctly summed up the State's position:

> Your honor will recall that before the trial started, the State made a motion to
> amend out of the indictment the allegation of value in excess of $250 as being
> surplusage under the Motor Vehicle Theft Statute.
>
> * * *
>
> . . . for this trial, the State made a motion to amend it out, to make it conform
> with the exact amount of proof. Defense objected to that amount and allowed
> it to remain in there.  They said they wanted that additional burden in there.
> Your honor then stated that since the State had voluntarily put that additional
> element on itself, we should continue to have to bare it, and we did.
>
> * * *
>
> What I may have said we were trying is of no moment. The State is bound by
> the indictment, which was an allegation of motor vehicle theft with the
> additional element, the unnecessary additional element which we had to prove
> – and did – beyond a reasonable doubt of a value of more than $250. Any
> embarrassment or trouble at trial caused to the defendant was caused by the
> defendant's prevailing on his opposition to our motion to amend. If this was
> a wound to the defendant, it was, your Honor, a self-inflicted wound.

*Id.* at 1044.

¶12.    In *Richmond*, this Court was not presented (as we are today) with the question of

whether an amendment to the indictment by removal of surplusage was appropriate.  Thus,

in the *Richmond* this Court had no need to address or discuss our precedent which analyzes

the removal of surplusage and sets forth the test therefor.  Accordingly, *Richmond* does not

serve as precedent for the issue of whether a motion to amend an indictment should be

granted or denied.  Rather, *Richmond* remains authority in cases where the indictment

includes surplusage which was not removed prior to trial.

¶13.    The requested amendment in *Richmond* would easily have met the test for

amendments to indictments espoused in *Griffin v. State*, 584 So. 2d 1274, 1275-76 (Miss.

1991) (discussed *infra*), and the trial court would have been fully justified in allowing the

6

State to amend. However, because the ***Richmond*** trial court denied the State's motion to amend the indictment, the issue in that case is different from the issue before us today. We must therefore analyze this case by evaluating whether the amendment to the indictment violated Lee's constitutional right to a fair trial.

**III.**

¶14.  In many instances, mere "surplusage"[3] may be stricken from an indictment without any prejudice to the defendant. For example, in ***Mixon***, the defendant was charged with motor vehicle theft, but the indictment included the word "feloniously," an element under the grand larceny statute. 921 So. 2d at 279. This Court held removal of the felonious intent language was proper. ***Id.*** at 280. Similarly, in ***Schloder***, the indictment charged that the defendant "did willfully, unlawfully and feloniously possess more than one ounce of marijuana *with intent to sell . . . .*" 310 So. 2d at 722 (emphasis in original). The defendant argued that "there is no such offense in the State of Mississippi as possessing marijuana with intent to sell." ***Id.*** We pointed out that the relevant statute made it

> unlawful for any person to knowingly or intentionally possess more than one ounce of marijuana and prescribe[d] as a penalty therefor a fine of $3,000 or imprisonment in the state penitentiary for not more than three years, or both. Therefore, the demurrer was properly overruled since the indictment charged appellant with the crime of possession of more than one ounce of marijuana. The words 'with intent to sell' were surplusage . . . .

***Id.*** at 723-24.

¶15.  Additionally, and more on point with the present case, the defendant in ***Simmons v. State***, 109 Miss. 605, 614, 68 So. 913, 914 (1915), was indicted for statutory rape. This

---

[3] The term "surplusage" is defined as "language that does not add meaning" and "[e]xtraneous matter in a pleading." Black's Law Dictionary 1172 (7th ed. 2000).

7

Court held that the language "without her consent" in the indictment was mere surplusage that could properly be removed without prejudicing the defendant. ***Id.*** at 915.

¶16.    In analyzing the amendment to an indictment against the previously mentioned background of constitutional protection, we look first to our Uniform Rules of Circuit and County Court Practice. Rule 7.09 provides that "[a]ll indictments may be amended as to form but not as to the substance of the offense charged." The rule further states that an "[a]mendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." Moreover, where a defect of substance exists, the indictment must be corrected by the grand jury. ***Spann v. State***, 771 So. 2d 883, 898 (Miss. 2000). Amendments to an indictment are permissible if they do not prejudice the defendant by (1) materially altering the essential facts of the offense or (2) materially altering a defense under the original indictment. ***Griffin***, 584 So. 2d at 1275-76. Thus, taken together, this authority sets forth the following test for analyzing an amendment to an indictment for the purpose of removing surplusage: (1) the removal of the surplusage must not change the substance of the offense charged; (2) the defendant must be afforded a fair opportunity to present a defense and must not be unfairly surprised; (3) the removal of the surplusage must not materially alter the essential facts of the offense; and (4) the removal of the surplusage must not alter a defense under the original indictment. Applying each part of the test, it is clear that the trial court did not err in amending Lee's indictment.

> (1)    *The removal of the surplusage must not change the substance of the offense charged.*

8

¶17. Lee was indicted under Section 97-3-95 of the Mississippi Code, which addresses the crime of sexual battery. Subsection (1) of that statute provides four separate and alternative acts, any one of which constitutes a violation of the statute. Lee was indicted and ultimately convicted under the fourth alternative, subsection (1)(d), which charged that Lee engaged in sexual penetration with "a child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." The surplusage in the indictment was the inclusion of an additional alternative act which, if proven, would constitute a separate and additional violation of the same statute.

¶18. Specifically, the indictment, before it was amended, included the language, "without her consent." The first alternative under the statute provides that a person is guilty of sexual battery by engaging in sexual penetration with "[a]nother person without his or her consent." Miss. Code Ann. § 97-3-95(1)(a). Stated another way, the original indictment charged that Lee committed two separate acts of sexual battery, one under subsection 1(a) and one under subsection 1(d).

¶19. Lee was fully on notice of both claims. The fact that the trial court allowed the State to amend the indictment and remove one of the claims is no more prejudicial to Lee than if the two claims of violation had been charged under two separate counts in the indictment, with the trial court later dismissing one of the counts. By allowing the amendment to the indictment which removed the claim that Lee engaged in sexual relations with the victim "without her consent," the State's burden of proof as to the charge that Lee engaged in sexual penetration with a child under the age of fourteen, when Lee was twenty-four or more months older than the child, did not change. Likewise, Lee's defense to this charge did not

9

change. Thus, the amendment did not alter the substance of the offense charged, and the first prong of the test allowing the amendment is satisfied.

> *(2)     The defendant must be afforded a fair opportunity to present a defense and must not be unfairly surprised.*

¶20.    There is no allegation, suggestion, or evidence in this case that Lee was not afforded the opportunity to defend the claim. Although Lee may validly assert he was surprised that the State moved to amend the indictment and remove the claim that his sexual relations with the child were without her consent, his surprise cannot be characterized as "unfair." The net effect of the amendment was that Lee only had to defend one claim that he violated the statute, rather than two. Thus, the second prong of the test allowing the amendment is met.

> *(3)     The removal of the surplusage must not materially alter the essential facts of the offense.*

¶21.    The essential facts of the offense, that is, that Lee engaged in sexual penetration with a child under the age of fourteen at a time when Lee was twenty-four or more months older than the child, were the same at the time of conviction as at the time of indictment. Thus, the third prong of the test allowing the amendment is satisfied.

> *(4)     The removal of the surplusage must not alter a defense under the original indictment.*

¶22.    As previously discussed, Lee was originally indicted for violating the statute in two separate and distinct ways. The removal of the surplusage did not alter Lee's defense to the claim which remained after the amendment. Thus, the fourth prong of the test allowing the amendment is met.

¶23. For the reasons stated, we find that the trial court did not abuse its discretion in allowing the amendment to remove the surplusage from the indictment.

**IV.**

¶24. Lee also argues that the trial court erred when it refused to allow a defense witness to impeach a prosecution witness. A careful review of the record reveals that the testimony Lee sought to impeach was a collateral matter, and the trial court was well within its discretion to refuse to allow Lee to call the impeachment witness.

¶25. One of the State's witnesses, Connie Evans, testified concerning certain observations she made of Lee and the victim together. On cross-examination, Evans admitted that she distrusted men, that her daughter had been sexually molested, and that she had said as much to her family. She denied, however, also telling these things to her neighbor, who coincidentally happened to be Lee's wife. Lee then offered his wife to testify that Evans did, in fact, tell her these things that she had admittedly told her family.

¶26. Lee did not offer his wife as an impeachment witness to contradict whether Evans distrusted men or whether her daughter had been molested. Instead, Lee's attorney asked Evans whether she had told these things to Lee's wife, and Evans said she had not. Lee's attorney then sought to call Lee's wife to show that Evans had, in fact, told her these things. Thus, the matter to be impeached was not the crucial testimony that Evans distrusted men or that her daughter had been molested. Instead, the matter to be impeached was whether Evans had stated these things to a neighbor. The story Evans allegedly told to the neighbor was consistent with her testimony at trial. It is also important to note that Evans admitted telling her family. She simply denied that she also told Lee's wife. Thus, whether or not Evans

11

actually spoke to Lee's wife is a collateral issue to which impeachment evidence is not allowed. ***Price v. Simpson***, 205 So. 2d 642, 643 (Miss. 1968).

¶27.    The trial court record reflects the following relevant portion of Evans's testimony:

Defense:        In that conversation - - in a conversation with
                her after that date, did you tell her that you
                did not trust men?

Evans:          No.

Defense:        Never told her that?

Evans:          No.

Prosecution:    Was that did not trust "me", Mr. Rainer
                or "men"?

Defense:        Did not trust "men."

Defense:        Did you tell her in that same conversation
                that you didn't trust men because your daughter
                had been sexually molested?

Evans:          No.

Prosecution:    Your Honor, objection to relevancy.

The Court:      I'm going to let him ask those questions.

Evans:          No.

Defense:        You didn't tell her that? You didn't tell
                her that your ex-husband had molested
                your daughter?

Prosecution:    Objection, Your Honor.

The Court:      Counsel Approach.

(Bench Conference)

12

Defense: So you deny having made those statements to Mrs. Lee?

Evans: I would never discuss that with anyone but my family.

Defense: So you have discussed it with someone, though, haven't you?

Evans: Never Mrs. Lee. Never anybody in my neighborhood.

Defense: But you have discussed it with other people?

Evans: My family.

Evans did not deny that her daughter had been molested or that she distrusted men. In fact, Evans was never even asked these questions during her cross-examination. Therefore, to allow the defense attorney to impeach Evans as to *whether or not Evans told Mrs. Lee* she "distrusted men" and "her daughter had been molested" is impermissible the issue is collateral.

¶28. Addressing collateral matters, this Court has established that a statement is collateral if it is not "one embodying a fact substantive in its nature and relevant to the issue made in the case." **Williams v. State**, 73 Miss. 820, 824, 19 So. 826, 827 (1896). In other words, a matter is collateral when it is not directly relevant to the issues in the case. Whether Evans distrusted men due to her daughter's molestation is relevant to show bias, but whether or not Evans *conveyed* that distrust to Lee's wife has nothing whatsoever to do with her bias. Whether or not Evans *told* her neighbor she "distrusted men" and "her daughter had been molested" is not directly relevant to the issues in this case.

13

¶29. Because the testimony sought to be impeached was a collateral matter, the trial court correctly refused to allow Lee to call his wife to impeach Evans.

## CONCLUSION

¶30. Because the amendment to the indictment merely allowed the removal of surplusage, and because the trial court was correct in refusing to allow Lee the opportunity to impeach the State's witness on a collateral matter, we affirm the judgments of the Court of Appeals and the circuit court.

¶31. **COUNTS I AND II: CONVICTIONS OF STATUTORY RAPE AND SENTENCES OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNTS I AND II SHALL RUN CONCURRENTLY. COUNTS III, IV, V AND VI: CONVICTIONS OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY TO THE TERM OF LIFE IMPRISONMENT ORDERED IN COUNTS I AND II. COUNTS VII, IX AND X: CONVICTIONS OF GRATIFICATION OF LUST AND SENTENCE OF FIFTEEN (15) YEARS ON EACH COUNT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY TO THE TERM OF LIFE ORDERED IN COUNTS I AND II AND THE THIRTY (30) YEARS ORDERED IN COUNTS, III, IV, V AND VI.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ. DIAZ, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

**EASLEY, JUSTICE, SPECIALLY CONCURRING:**

¶32. In my opinion, the majority correctly finds that the trial judge did not abuse his discretion in refusing to allow the impeachment testimony. However, I am compelled to write separately in order to provide my reasoning. In deciding whether reversible error

14

resulted in this case, we must examine the trial court's decision to exclude the testimony under an abuse of discretion standard of review. "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990); *see Byrom v. State*, 863 So. 2d 836, 878 (Miss. 2003).

¶33. I find that the trial court did not abuse its discretion in denying the impeachment testimony as the proper foundation was not laid for Lee to call his wife, Beth, as an impeachment witness. Evans never denied that her daughter had been molested or that she distrusted men. In fact, Evans was never so questioned. However, Evans testified that she never discussed with Lee's wife that her daughter had been molested by her ex-husband or that she did not trust men. She testified that she had told her family, and she would never discuss such with a neighbor.

¶34. Here, Lee was convicted on two counts of statutory rape, four counts of sexual battery, and three counts of gratification of lust for sexual activities he engaged in with a young girl. Clearly, the defense's attempt to call Lee's wife to the stand was to impeach Evans's testimony by showing that *she was biased against men as a result of her daughter being sexually molested*, not whether the alleged conversation in question ever occurred between Evans and Lee's wife. The defense did not question Evans regarding whether she was biased against men.

¶35. Also, Evans did not deny when questioned that she had discussed her daughter's sexual molestation and her feelings toward men as a result of the molestation with family

15

members. She only denied that she had such a conversation with Lee's wife. As such, the defense fails to demonstrate a reason to justify calling Lee's wife for impeachment purposes.

¶36. This Court in *Whigham v. State*, 611 So. 2d 988 (Miss. 1992), made it clear that a proper foundation must be established, stating:

> If counsel for a party desires to impeach the testimony of a witness with some pretrial, out-of-court statement that is inconsistent with his trial testimony, it is only fair that the witness, while he is on the stand, be asked about it, and be given an opportunity to explain or deny it. Nor does this create any difficulty to counsel.

> *It is manifestly unfair, after the witness has been excused, to attempt to offer a pretrial inconsistent statement of the witness into evidence, and no trial court should be faulted for excluding such hearsay testimony in the absence of laying any foundation.* In this case counsel surely knew prior to trial about the statements Stewart allegedly made to Phyllis. Yet he did not ask Stewart a single question about any of them.

> There may be instances in which a pretrial inconsistent statement of a witness will not be known until after the witness has left the stand. In such an instance a trial judge in the interest of justice may permit the introduction of such statement, but only after making sure that the witness is available for recall and is given an opportunity to explain or deny the statement. Even here, however, it would be better procedure to permit the witness to be recalled for further examination and asked about the statement, and given an opportunity to explain or deny it, rather than introducing the statement and then recalling the witness.

*Whigham*, 611 So. 2d at 994 (emphasis added).

¶37. Furthermore, the Court of Appeals correctly found that Evans's testimony was not crucial to the defense, and the trial court's refusal to allow impeachment of this witness was not reversible error. *Lee v. State*, 2005 Miss. App. LEXIS 918, 15-16 (Miss. Ct. App. 2005). The court stated:

> While cross-examining Connie Evans, who lived across the street from Lee, defense counsel asked whether she had told Beth Lee, the defendant's

wife, that she did not trust men because Evans' daughter had been molested by her ex-husband. Evans testified that she had not made such a statement to Beth and stated that she would never discuss anything like this with anyone except with her family. Later, while examining Beth Lee, the defense sought to elicit testimony that Evans had made a statement to Beth about Evans' feelings toward men in general. The State objected and the trial court ruled that this was inadmissible hearsay. Lee now asserts that this ruling constitutes reversible error.

Evans' testimony was not essential to the State's case. She was not the complaining witness nor did she observe any criminal behavior on Lee's part. Evans testified only that she saw Lee walk [the female victim] from the bus stop to his garage on several occasions. This was straightforward testimony. We fail to see how Evans' attitude towards or preconceived notions about men would impact the credibility of this testimony. Whether Evans had given this information to Beth would have added little if anything to Lee's position. Thus, the excluded testimony would be harmless, at best.

Because Evans' testimony was not crucial, the refusal to allow insubstantial impeachment of this witness is not reversible error. *None of the information the statement may have provided contradicted Evans' testimony in any significant manner such that the interests of justice would demand this Court's finding an abuse of discretion*. *See Peyton v. State*, 858 So. 2d 156, 160 (Miss. Ct. App. 2003). Moreover, it is inconceivable that a different result would have been reached had the testimony been allowed.

*Lee*, 2005 Miss. App. LEXIS 918 at 14-16 (emphasis added). As such, I find that the impeachment testimony sought by the defense was not directly relevant in this case and merely amounted to surplusage information. Further, even assuming that there was any error by the trial court excluding the testimony, it amounted to harmless error and would not have affected the outcome reached by the jury in this case.

¶38. For the foregoing reasons, I conclude that the trial court did not err in refusing the impeachment testimony sought by the defense. Accordingly, I agree with the affirmance of the trial court's judgment in its entirety.

17

**WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., JOIN THIS OPINION.**

**DIAZ, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶39.    Because I disagree with the majority's limitation on *Richmond*, I concur in result only as to issue I.  Furthermore, because a witness's personal bias is not a collateral matter, I must respectfully dissent as to issue II.

**I. The Majority Incorrectly Distinguishes *Richmond*.**

¶40.    The majority says that it distinguishes the *Richmond* case simply because the trial court denied the State's motion to amend.  The majority holds that if the trial court denies a party's motion to amend an indictment, *Richmond* is applicable.  If the trial court grants a party's motion to amend, the majority's newly-crafted four-part test is applicable.  To make a distinction on such a matter provides an unnecessary complication of our doctrine of amending indictments and will no doubt lead to immense confusion at the trial level.  Contrary to the majority's assertion, the *Richmond* case has *everything* to do with "the issue of whether a motion to amend an indictment should be granted or denied."  If the majority wishes to so limit our precedent in *Richmond*, they should simply overrule the case rather than further confound the issue and burden our trial courts.

¶41.    Additionally, the four-part test presented by the majority is redundant and overly complicated. The test is simple.  *Richmond* correctly requires that the prosecution prove any extra *substantive* elements erroneously included in the indictment.  751 So. 2d at 1046.  To determine whether an element is one of substance or one of form, the trial judge should apply the test laid out in *Griffin*:  whether the amendment will (1) materially alter the essential

18

facts of the offense, or (2) materially alter a defense that the defendant had under the original indictment so as to prejudice the defendant's case. 587 So. 2d at 1275-79. This is all that should be asked of trial judges when determining whether an amendment to an indictment is proper.

¶42. Finally, **Richmond** is distinguishable from this case, but for more pertinent reasons than the majority holds. In **Richmond**, it was possible to prove the value of the stolen item. In rape and sexual battery cases involving minors, it is legally impossible to prove that a child under 14 consented to the sexual acts. The defendant argues that by removing the phrase "without her consent," the court denied him a complete defense. However, this defense was a legal nullity which he never had under the original indictment, as children under the age of 14 cannot consent to sexual acts. Even if the State had been forced to prove the consent element, all the law would require is proof that the victim was under 14. Because the amendment did not change the essential facts or alter Lee's defense in any way, the amendment was permissible.

**II. A Key Witness's Personal Bias is Not a Collateral Matter.**

¶43. Contrary to the majority's assertion, Evans never admitted her distrust of men. At most, she stated that she talked about "it" with her family; "it" meaning her daughter's molestation. Therefore, the *only* evidence of Evans's bias was the statement she had made to Lee's wife, and he should have been allowed to introduce her testimony.

¶44. The majority is correct that a witness may not be impeached on an immaterial or collateral matter, but "any evidence that is material and relevant, which has a bearing on the motives, bias, and interests of a witness and affects the credibility of that witness is

19

admissible." ***Miskelley v. State***, 480 So. 2d 1104, 1108 (Miss. 1985). The majority, however, confounds a very basic application of Rule 613(b). As explained in a treatise on Mississippi Evidence:

> If the witness under cross-examination denies having made a proper statement, his adversary may introduce extrinsic evidence to the contrary. For example, witness A, asked whether he ever made a prior statement, answers in the negative. If the cross-examiner then wishes to call witness B to the stand to introduce evidence to the contrary, that would be considered extrinsic evidence. If the witness admits making the inconsistent statement, the statement may not be introduced by the cross-examiner.

Victoria C. Ferreira, *Mississippi Evidence* 203 (4th ed. 2001).

¶45. Consistent with this reading of the rule, this Court has reversed a criminal conviction under very similar circumstances. ***Tate v. State***, 192 So. 2d 923, 925 (Miss. 1966). In ***Tate***, we reversed a criminal conviction when the defendant was not allowed to impeach a prosecution witness with evidence of bias. The evidence of bias would have been statements the prosecution witness had made to a defense witness. Therefore, the matter was not *whether* the witness made the statement, but the material issue of the witness's bias.

> Appellant also assigns as error the action of the trial court in sustaining an objection of the prosecution to certain testimony of one Tucker.
>
> Witness Morris, who was the only eyewitness to the homicide, other than appellant, and who also had been wounded by appellant, had testified on cross-examination that he was a friend of appellant and had never cursed appellant "behind his back." His version of the actual shooting was most damaging to appellant's defense. Appellant offered Tucker for the purpose of showing bias and prejudice on the part of Morris and for the purpose of impeaching Morris' credibility. The testimony of Tucker, developed in the absence of the jury, was to the effect that he had heard Morris refer to appellant in the most opprobrious terms and curse him when he (appellant) was not present. He also said that Morris had entertained bitter feelings against appellant. We think that this

20

testimony should have been allowed, its weight and value to be determined by the jury.

*Id.*

¶46.    Similarly, evidence of Evans's bias or prejudice toward men was *highly* relevant in this case. The underlying reason for her possible bias was her ex-husband's sexual molestation of her child, the exact same criminal behavior alleged to have been committed by Lee. Moreover, Evans was only one of three prosecution witnesses and the only one to corroborate J.R.G.'s testimony that the defendant met her at the school bus. Moreover, there was absolutely no medical or forensic evidence implicating Lee, and the prosecution failed to demonstrate with any level of certainty a time when Lee would have been alone with J.R.G. Because Evans's testimony was offered as impeachment on the material matter of a key witness's personal bias, it was reversible error for the trial judge to exclude Defendant's wife's testimony.

¶47.    Therefore, I would reverse the judgments of the Court of Appeals and the trial court and remand this case for a new trial.

    **GRAVES, J., JOINS THIS OPINION**.