CHANDLER, Justice,
objecting to the order with separate written statement:
¶ 1. I do not join the Court’s order dismissing the certiorari petition. This case involved the tragic death of seventy-eight-year-old Marie Payne (Mrs. Payne), who was run over by Cleveland Gowdy as he backed his pickup truck through a parking garage on September 5, 2008. There were no eyewitnesses to the accident other than Gowdy and his wife. Gowdy denied that he saw Mrs. Payne prior to the accident and, throughout the trial, the defense suggested that the reason Gowdy had not seen Mrs. Payne was that she had fallen just prior to being struck by Gowdy’s truck. Mrs. Payne had fallen on prior occasions, but the trial court excluded the evidence of her prior falls as irrelevant and more prejudicial than probative. But later, the trial court allowed evidence of a May 2008 fall in the guise of impeachment evidence. The jury found that Gowdy was *922 not negligent. As explained below, the trial court’s ruling erroneously permitted Gowdy to impeach Mrs. Payne’s sons, (the Paynes) on a collateral matter, resulting in substantial prejudice. I would reverse and remand for a new trial.
¶ 2. Relying upon the principle that a picture is worth a thousand words, I attach to my objection an exhibit that shows Mrs. Payne’s final resting place under Gowdy’s truck. The exhibit shows how far Gowdy traveled as he backed through the parking garage in the wrong direction. Mrs. Payne was five feet tall, approximately nine to ten inches taller than the tailgate of Gowdy’s truck. Tim Corbitt, an accident reconstructionist, testified that Mrs. Payne would have been visible to Gowdy at all times as he backed up. No expert testimony or other evidence substantiated the defense’s speculation that Mrs. Payne fell prior to being hit by Gowdy. Because no evidence substantiated the fall theory, the trial court excluded evidence that Mrs. Payne had fallen on prior occasions as irrelevant and more prejudicial than probative.
¶ 3. But later, the trial court permitted evidence that Mrs. Payne had fallen in May 2008 to impeach the testimony of Thomas Payne. Thomas testified that Mrs. Payne had no physical restrictions. Thomas testified that Mrs. Payne saw doctors, but she was an independent person and never discussed her medical conditions with him. On cross-examination, Gowdy asked whether Mrs. Payne had ever had any issues with her shoulder. Thomas replied, “Not that I’m aware of.” His brother Ronnie testified that he had seen his mother daily. Gowdy did not ask Ronnie if he was aware of Mrs. Payne’s shoulder injury. Neither brother was asked about Mrs. Payne’s prior falls.
¶ 4. During the defense ease, the deposition testimony of Mrs. Payne’s treating physician, Dr. Rhonda Wilson, was read to the jury. The Paynes sought to redact from Dr. Wilson’s testimony all mention of prior falls. Gowdy argued that he should be allowed to read Dr. Wilson’s response concerning Mrs. Payne’s May 2008 fall because, in the response, Dr. Wilson mentioned that Mrs. Payne had sustained a fracture to her right shoulder in the fall. Gowdy argued that Dr. Wilson’s testimony that Mrs. Payne had a shoulder injury impeached the Paynes’ testimony that Mrs. Payne had no physical restrictions. The trial court permitted the impeachment despite its prior ruling that the evidence of prior falls was irrelevant and unduly prejudicial, stating, “The way I recall, I said that if there is affirmative information that’s presented that you feel like is inconsistent with the truth, you can impeach on that issue. And he asked Mr. Payne about that; he denied that. Evidently, that’s the truth.” The trial court attempted to limit Dr. Wilson’s testimony so that it would not incorporate evidence of prior falls. Nonetheless, the following testimony of Dr. Wilson was read to the jury:
Q. Okay. Well, do you know whether in May of 2008 Ms. Payne had complained of having fallen?
A. There was — in May of 2008, the note indicates that she said she had fallen at that point since I saw her last and had sustained a fracture to her right shoulder. But — so she said she was progressing okay from that standpoint.
The Paynes responded with the following testimony from Dr. Wilson:
Q. As far as if someone tries to suggest that Dr. Wilson’s record mentioned a fall and because of that Marie Payne fell before she was struck by this truck, you are not saying that here today, are you?
*923 A. I’m not saying that, and I don’t know that anybody would know — could possibly know that.
¶ 5. This Court reviews the trial court’s ruling admitting or excluding evidence for abuse of discretion. Richardson v. State, 74 So.3d 317, 329 (Miss.2011). We will reverse only if there was an abuse of discretion that affected a substantial right of a party. Id.; M.R.E. 4 103(a). “Impeachment is the process of discrediting a witness.” Johnson v. State, 655 So.2d 37, 41 (Miss.1995). A witness may be impeached by showing bias or prejudice, or by attacking the witness’s recollection of events. Id. But “[i]t is a well established rule that it is error to allow a witness to be contradicted on an immaterial (or collateral) matter.” Id. (quoting Price v. Simpson, 205 So.2d 642, 643 (Miss.1968)). A party has no right to establish a contradiction regarding a collateral matter. Johnson, 655 So.2d at 41. A matter is considered to be collateral if the cross-examining party would not be able to prove the matter in his or hers case-in-chief. Id. “[A] matter is collateral if it is not ‘one embodying a fact substantive in its nature and relevant to the issue made in the case.’ ” Croft v. State, 992 So.2d 1151, 1156 (Miss.2008) (quoting Lee v. State, 944 So.2d 35, 43 (Miss.2006)).
¶ 6. I examine the testimony of Dr. Wilson to determine whether its use constituted impeachment on a collateral matter. Because Thomas testified that Mrs. Payne did not share her medical information with him, the evidence of the shoulder injury was of trivial impeachment value — the jury already knew that Thomas was not completely familiar with his mother’s medical history. Gowdy elected not to question Thomas about Dr. Wilson’s note on the shoulder injury during cross-examination. Instead, Gowdy sought admission of the question and answer that acknowledged Mrs. Payne’s May 2008 fall. However, the trial court had excluded all evidence of the prior falls, finding that this evidence was irrelevant and more prejudicial than probative. Therefore, evidence of the prior falls was inadmissible at the trial. Plainly, Gowdy’s request for admission of extrinsic evidence of the fall and resultant shoulder injury was an attempt to place inadmissible evidence before the jury. Gowdy would not have been able to admit the evidence of the prior fall in his case-in-chief. Under the trial court’s exclusionary ruling, the evidence of the prior fall was irrelevant and collateral; it did not “embody[ ] a fact substantive in its nature and relevant to the issue made in the case.” Croft, 992 So.2d at 1156 (quoting Lee, 944 So.2d at 43). The trial court erred by allowing Gowdy to impeach the Paynes on a collateral issue.
¶ 7. It is beyond question that the erroneous impeachment substantially prejudiced the Paynes. Gowdy had questioned witnesses about the possibility that Gowdy had not seen Mrs. Payne because she had fallen prior to being run over. Gowdy argued in closing that he had shown “very reasonable circumstances where Mr. Gow-dy could not have seen her as she crossed his path or had fallen behind his truck.” Gowdy also reminded the jury that Mrs. Payne had fallen in May 2008. At the hearing on the Paynes’ motion for judgment notwithstanding the verdict or a new trial, Gowdy argued that “circumstantial evidence could have led the jury to conclude what happened was unavoidable and that she may have fallen.” In discussing the ruling allowing Dr. Wilson’s testimony about the May 2008 fall, the trial court stated “I allowed evidence that was clearly prejudicial.” Certainly, the erroneous admission of the unrelated May 2008 fall substantially prejudiced the Paynes by supporting Gowdy’s speculative argument that Mrs. Payne had fallen on the day of *924 the accident. I would reverse and remand for a new trial.
WALLER, C.J., KITCHENS AND KING, JJ, JOIN THIS SEPARATE WRITTEN STATEMENT.