# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-00934-SCT

*RICKIE OMAR SMITH a/k/a RICKIE SMITH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/2017 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| TRIAL COURT ATTORNEYS: | DANIELLA MARIE SHORTER |
| | M. A. BASS, JR. |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: MOLLIE M. McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA AINSWORTH |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/09/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., COLEMAN AND MAXWELL, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. Rickie Omar Smith was indicted on one count of armed robbery in violation of Mississippi Code Section 97-3-79 (Rev. 2014) and one count of burglary of a dwelling in violation of Mississippi Code Section 97-17-23 (Rev. 2014). The jury found Smith guilty on both counts, and the circuit court sentenced Smith to thirty years for armed robbery and twenty-five years for burglary of a dwelling, with the sentences to run concurrently. Following the denial of Smith's post trial motions, he appeals, arguing that the evidence was

insufficient to sustain the jury's verdict for armed robbery. Because the evidence was sufficient to sustain the jury's verdict for armed robbery, we affirm.

## FACTUAL BACKGROUND

¶2. One evening in April 2016, Jessica Joe-Cobblah Turner, a student at Alcorn State University, studied for exams at her home in Port Gibson, Mississippi. Around 10:00 p.m., Jessica told her fiancé Joe Turner that she was going to sleep. Joe told Jessica he was going out with friends, and Jessica went to sleep. Jessica woke up when Joe came back in the house around 11:00 p.m. to change clothes. Joe left and Jessica went back to sleep. Some time later, Jessica woke up when she heard something fall in the bathroom. At the same time, she heard a knock at the door. Thinking it was Joe, she went to the door and asked who was there. Jessica did not recognize the voice and she heard a second man at the door. They demanded that Jessica open the door. While standing at the door, she heard a kitchen window break.

¶3. Jessica went to get her phone and called Joe to tell him that people were breaking in, but Joe did not answer. While she was trying to call Joe, a tall man approached her from the back and started choking her. Jessica believed that the tall man had come through the bathroom window. The tall man later was identified as Smith. Smith forced Jessica to the door where the two other men were waiting outside. Smith threatened to kill Jessica unless she opened the door; Jessica opened the door and a man with a medium build entered the house pointing a handgun at Jessica. The third man remained at the door as a lookout. Smith and the other man forced Jessica to a chair and began asking where "random stuff" was

2

located, including Joe's gun and money. Smith had a covering on his face, but it kept falling down, so she was able to see his entire face. Jessica observed a tattoo on Smith's forehead.

¶4.    Jessica, who was about to leave for military training, had two months of rent saved up in her bedroom. In an effort to delay in case Joe returned and because she did not want to give up her money, she responded that she did not know. Smith began to push Jessica around and said "Stop playing with me, bitch." Smith said, "You're lying to us" and began hitting Jessica. Smith and the other man passed the handgun back and forth between one another. Smith put the handgun to Jessica's head, saying "I'll kill you now, bitch, if you don't stop playing with me." Jessica was terrified and thought she was going to die. Smith continued to hit and threaten Jessica. Smith held a knife to her neck and she told them she would take them to the money.

¶5.    They threw Jessica to the floor, and the other man put the gun to the back of her head. Smith put the knife to Jessica's neck and said, "Bitch, I'll kill you right now if you keep playing with me." Jessica responded, "I'm taking you to the money." She led the men to the bedroom, which they ransacked. The men took $400 or more from the bedroom. At trial, photos of the ransacked bedroom were admitted into evidence.

¶6.    They demanded more money and Joe's gun, but Jessica told them that she did not know where more money or the gun were. The men took Jessica to the dining room, where she was left with Smith. Smith began punching Jessica, demanding more money. One of the other men said to Smith, "Watch that bitch. Make sure she don't move." Smith responded, "She's not going to move. I'm going to kill her if she moves." One of the other men told

3

Smith, "Shoot that bitch. Shoot that bitch. I don't give a f***. Shoot that bitch." Smith responded, "If she acts stupid, I'm going to shoot her."

¶7.     Meanwhile, the other men were walking through the house looking for other items. At trial, photos of the ransacked kitchen, dining room, and laundry room were admitted. Smith tied up Jessica with a vacuum cord and retrieved Jessica's BB gun. Smith tried to shoot Jessica with the BB gun, but it would not shoot. Smith turned the BB gun around and tried to hit Jessica with the butt of the gun, then one of the other men said, "we've got to go." Smith dropped the BB gun, and the three men left the house.

¶8.     Jessica waited a few minutes and called the police. Jessica was taken to the emergency room. Jessica described the items that had been taken during the robbery, including a red designer belt, to law enforcement. From a photo line-up, Jessica identified Smith as one of the men who had robbed her and burglarized her home. Later, at the trial, Jessica testified that she was 100 percent sure that Smith was one of the men who had robbed her and burglarized her home. Jessica also testified that Smith had the same forehead tattoo at the time of trial that she had observed during the robbery and burglary.

¶9.     Isaiah Anderson testified at trial. Anderson testified that he had known Smith a/k/a "Big Slim" for a few weeks prior to April 2016. Anderson had heard about the robbery and spoke with Smith a day or two later. Smith told Anderson that he had just "hit a lick" and offered to sell him a PlayStation and a red designer belt. Smith showed Anderson the PlayStation and red designer belt that Anderson presumed had been taken during the robbery.

4

Smith told Anderson that someone who committed the robbery with him had told Smith to shoot the victim, but Smith did not.

¶10. Smith took the stand in his defense. Smith denied breaking into Jessica's house. Smith testified that he was in another county when the robbery occurred. Smith denied being associated with the other two men involved in the robbery. Smith admitted that he knew Anderson and had hung out with him a number of times. Smith denied offering to sell any items to Anderson. Smith testified that Anderson had been a jailer, but he had been caught bringing contraband into the facility where he had worked. Smith testified that Anderson was in jail with one of the men involved in the robbery, who had told him what had been taken from Jessica's house. Smith claimed that Anderson and the others wanted to blame the crimes on him because they were younger and all close friends.

¶11. At the conclusion of the trial, the jury found Smith guilty of armed robbery and burglary of a dwelling. The circuit court sentenced Smith to thirty years for the armed robbery and twenty-five years for the burglary of a dwelling. Smith filed a motion for a judgment notwithstanding the verdict. The circuit court denied the motion. Smith appeals, raising one assignment of error, which is whether the evidence was insufficient to sustain the jury's verdict for armed robbery.

## STANDARD OF REVIEW

¶12. A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence. *Lenoir v. State*, 224 So. 3d 85, 90 (¶ 18) (Miss. 2017). When a defendant challenges the sufficiency of the evidence on appeal, the Court

5

considers each element of the offense and reviews all of the evidence in the light most favorable to the verdict. Th[e] Court must accept as true all credible evidence consistent with guilt. Th[e] Court must give the State the benefit of all favorable inferences that may reasonably be drawn from the evidence. Moreover, matters regarding the weight and credibility given the evidence are the province of the jury. Th[e] Court may reverse only when, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Thus, if any rational trier of fact could have found each and every one of the elements of the crime beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution, the verdict must stand.

*Cowart v. State*, 178 So. 3d 651, 666 (¶ 41) (Miss. 2015) (internal citations and quotations omitted).

## DISCUSSION

¶13.    Smith does not challenge the sufficiency of the evidence in the traditional sense by arguing that the State failed to prove all the necessary statutory elements of armed robbery. Instead, Smith argues that "[b]eyond the statutory elements of [armed] robbery required to be in the indictment, the State charged that Smith took specific property – a PlayStation, a wallet, a purse, and approximately $400." Smith characterizes the link between the PlayStation and the robbery as "weak" at best and concedes that testimony showed that $400 cash and a red designer belt had been taken from Jessica's house. Smith contends that there was no mention of a wallet or purse at trial.[1]  Thus, Smith argues that the evidence was insufficient to sustain a guilty verdict because the State failed to prove that Smith or his

---

[1]  While a purse or wallet was never specifically mentioned at trial, Jessica testified that the three men demanded "random stuff" and they took "money and stuff" from her bedroom.

accomplices took the other specific items listed in the indictment during the robbery, namely the purse and wallet.

¶14. Section 97-3-79 defines armed robbery as follows:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery[.]

Miss. Code Ann. § 97-3-79 (Rev. 2014). The Court has held that the "elements of robbery are such that a robbery indictment need not list the specific item that is the subject of the robbery." *Batiste v. State*, 121 So. 3d 808, 836 (¶ 43) (Miss. 2013). Likewise, the elements of armed robbery are such that an armed robbery indictment need not list the specific item that is the subject of the armed robbery. Miss. Code Ann. § 97-3-79; *see also Ewing v. State*, 34 So. 3d 612, 616 (¶ 12) (Miss. Ct. App. 2009) (stating that the "statute does not suggest that a description of the personal property allegedly taken is a necessary element of the crime.").

¶15. Although a description of the specific personal property subject to an armed robbery is not necessary, Smith's indictment listed specific items taken from Jessica's home. With respect to Smith's armed robbery charge, his indictment read:

> that Rickie Omar Smith, late of county aforesaid, on or about the 27th day of April, 2016, in Claiborne County, Mississippi, and within the jurisdiction of this court, with the unlawful and felonious intent to take, steal and carry away from the presence of Jessica Joe-Cobblah, a human being, personal property, of value of Jessica Joe-Cobblah, he, the said Rickie Omar Smith, by putting the said Jessica Joe-Cobblah in fear of immediate injury to her person by the display and exhibition of certain firearms and deadly weapons, to-wit: a bb gun and a knife, did wilfully, unlawfully and feloniously take, steal and carry away from the presence of the said Jessica Joe-Cobblah, against her will, certain

7

personal property of value of the said Jessica Joe-Cobblah, to-wit[2]: a playstation, wallet, purse and approximately four hundred dollars in United States currency, contrary to and in violation of Section 97-3-79 of the Mississippi Code of 1972, and against the peace and dignity of the State of Mississippi, this being count one of the indictment[.]

¶16. The language of the jury instruction setting out the essential elements of armed robbery tracked the language of the indictment and mentioned the specific items taken. The parties also agreed to the following jury instruction, which was given to the jury:

If you find from the evidence in this case beyond a reasonable doubt that:

(1) On or about the 27th day of April, 2016, in Claiborne County, Mississippi;

(2) Rickie Omar Smith did willfully, unlawfully, and feloniously, with the unlawful and felonious intent to take, steal and carry away from the presence of Jessica Jo-Cobblah;

(3) a human being;

(4) personal property of value of Jessica Joe-Cobblah, against her will, to-wit: a playstation, wallet, purse and approximately four hundred dollars in United States currency;

(5) by putting the said Jessica Joe-Cobblah in fear of immediate injury to her person by the display and exhibition of certain firearms and deadly weapons, to-wit: a BB gun and a knife,

then you shall find the defendant, Rickie Omar Smith, guilty of Armed Robbery.

If the prosecution has failed to prove any one or more of the above listed elements of Armed Robbery, beyond a reasonable doubt, then you shall find Rickie Omar Smith not guilty as to Count One, Armed Robbery.

---

[2] To wit is defined as: "That is to say; namely <the district attorney amended the complaint to include embezzlement, to wit, 'stealing money that the company had entrusted to the accused'>." *To wit*, Black's Law Dictionary (10th ed. 2014).

¶17. Smith does not argue that his indictment was defective, nor does Smith argue that the jury instruction was improper; rather, Smith argues that the State voluntarily increased its burden by including "surplus language" in the indictment, *i.e.*, the purse and wallet. Smith relies solely on ***Richmond v. State***, 751 So. 2d 1038 (Miss. 1999), in support of his argument. Smith argues that, under ***Richmond***, the State must prove each element of proof contained in the indictment, even surplus language. However, the holding in ***Richmond*** is inapplicable to the case *sub judice*.

¶18. In ***Richmond***, the defendant was charged with motor vehicle theft, but the indictment contained language adding an additional element of dollar value, which is an essential element for the different crime of grand larceny. *Id*. at 1040, 1042 (¶¶ 1, 8-10). Prior to trial, the State moved to amend the indictment to delete the words "of a total value of more than $250" as being mere surplusage and outside the elements of the crime of motor vehicle theft. *Id*. at 1042 (¶ 10). The defendant objected, arguing that the indictment was not clear as to whether the defendant was being charged with grand larceny under Mississippi Code Section 97-17-41 or motor vehicle theft under Mississippi Code Section 97-17-42. *Id*. at 1042-43 (¶ 10).

¶19. The trial court found that to delete the value language would constitute a substantive amendment and refused to allow the amendment. *Id*. at 1043 (¶ 10). The trial court then asked whether the parties could still go forward under the "grand larceny" indictment. *Id*. Following trial, the jury was instructed on the essential elements of motor vehicle theft as

9

well as the additional element of the dollar value of the vehicle. *Id*. at 1043, 1044, 1047 (¶¶ 11, 13, 24). The defendant was convicted of motor vehicle theft. *Id*. at (¶ 13).

¶20. On appeal, the defendant argued that, because the indictment contained the dollar value as required by grand larceny, combined with all the necessary elements of motor vehicle theft, he was unconstitutionally denied notice of the crime for which he was charged. *Id*. at 1045 (¶ 17). The Court held:

> The grand jury indictment returned against Richmond contained all of the elements set forth in of the Mississippi Uniform Circuit and County Court Rule 7.06. At the top of the indictment, Richmond was specifically informed that he was charged with a violation of Miss. Code Ann. § 97–17–42, "mot. veh. theft." Richmond has not shown that the mistaken inclusion of the dollar amount of the vehicle, as required by Miss. Code Ann. § 97–17–41(a) for grand larceny, prejudiced him in any way or that he was unaware of what crime he was charged with committing or that he was unable to prepare an adequate defense because of the indictment.
>
> So long as from a fair reading of the indictment, taken as a whole, the nature and cause of the charge against the accused are clear, the indictment is legally sufficient. *Harrison v. State*, 722 So. 2d 681, 687 (Miss. 1998) (citing *Henderson v. State*, 445 So. 2d 1364, 1368 (Miss. 1984)). Having specifically informed Richmond of the offense charged, as well as the detailed code section number, the State handicapped itself through this indictment by adding an unnecessary element of proof. Richmond's objection to the State's attempted deletion of this surplusage was sustained by the trial court. Judge Gibbs recognized that to allow an amendment such as striking the value of the car would be a substantive change in the indictment. He therefore correctly required the State to prove the element of value pursuant to Richmond's objection. Under these circumstances, Richmond can make no valid claim of prejudice by the indictment.

*Richmond*, 751 So. 2d at 1045–46 (¶¶ 18-19). The Court affirmed the trial court's finding that the trial court's reference to the "grand larceny" indictment was harmless error since it

had no effect on the verdict. *Id*. at 1046 (¶ 20). The Court concluded that "because of the overwhelming weight of the evidence in the case, the error clearly was harmless. *Id*.

¶21. The Court's decision in *Richmond* addressing an alleged defective indictment is not applicable to the case *sub judice*. The *Richmond* Court wrote that "the State [had] handicapped itself through th[e] indictment by adding an unnecessary element of proof" because the value of the vehicle is not an essential element of motor vehicle theft. *Id*. at 1046 (¶ 19). The Court explained that "to allow an amendment such as striking the value of the car would be a substantive change in the indictment." *Id*.

¶22. Unlike the substantive change described in *Richmond*,[3] where the value of the motor vehicle arguably changed the crime from motor vehicle theft to grand larceny, the identity or lack thereof of personal property in an armed robbery does not change the crime. In other words, the addition or removal of specific personal property in the indictment for armed robbery does not implicate an additional substantive element not present in the armed robbery statute, nor does it change armed robbery to another potential crime. While the description of a purse and wallet in the indictment was not necessary to the indictment, it also was not improper.

¶23. The State had the burden of proving the essential elements of armed robbery. "The elements of armed robbery are: (1) a felonious taking or attempt to take; (2) from the person

---

[3] In *Lee v. State*, 944 So. 2d 35, 38 (¶ 6) (Miss. 2006), the Court clarified *Richmond*'s holding that the State was required to prove an unnecessary element alleged in the indictment. The Court noted that the trial court in *Richmond* would have committed no abuse of discretion had it found that the language related to value was mere surplusage and allowed the State to amend the indictment by removing the language. *Lee*, 944 So. 2d at 39 (¶ 11).

11

or from the presence; (3) the personal property of another; (4) against his will; (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." *Cowart*, 178 So. 3d at 666 (¶ 42) (citing Miss. Code Ann. § 97-3-79).

¶24.    The only element relevant to the present appeal is "the personal property of another." Moreover, as previously recognized, a description of the property subject to an armed robbery is not a necessary element of the crime. Miss. Code Ann. § 97-3-79; *see also Ewing v. State*, 34 So. 3d 612, 616 (¶ 12) (Miss. Ct. App. 2009). The items listed in the indictment and jury instruction did not add an additional substantive element apart from the crime of armed robbery as in *Richmond*, where the indictment and jury instruction contained all of the essential elements on motor vehicle *as well as* an additional essential element of grand larceny.

¶25.    The Court of Appeals has noted that "it is important to remember that robbery is not a crime against property but is a crime against the person." *Woods v. State*, 883 So. 2d 583, 588 (¶ 10) (Miss. Ct. App. 2002)). "As such, its primary purpose is to protect the safety and welfare of individuals from the prospect of violence against their persons, albeit that the violence may occur as part of a scheme to deprive that person of his property." *Id*.

¶26.    The Court has rejected a similar argument that Smith makes today in *Passons v. State*, 45 So. 2d 131, 133 (Miss. 1950), *overruled on other grounds by Simmons v. State*, 568 So. 2d 1192 (Miss. 1990). In *Passons*, the Court rejected a defendant's assignment of error with respect to a jury instruction that tracked the indictment "naming the truck, the liquor, the

$290, or any part thereof." *Id*. The Court held the "test in robbery is whether or not *any* of the property named in the indictment was taken by violence, force or fear; and we do not think this assignment is well taken." *Id*. (emphasis added). Likewise here, the element is met if the jury found that *any* personal property of Jessica's was taken by Smith.

¶27. The State argues that it did not have to prove that Smith or his accomplices took every item listed in the indictment. In support, the State relies on *Grimsley v. State*, 60 So. 2d 509, 511 (Miss. 1952), in which the Court wrote:

> As a general rule, where an indictment charges the theft of a certain number or quantity of things, the state may prove the theft of a greater number or quantity than that alleged, or even of a lesser number or quantity if the value of such number or quantity is sufficient to bring the crime within the grade of offense with which accused is charged.

*Grimsley v. State*, 60 So. 2d 509, 511 (Miss. 1952). In *Nations v. State*, 199 So. 3d 1265, 1271 (Miss. Ct. App. 2016), the Court of Appeals recently applied the general rule announced in *Grimsley*, stating that "rather than moving to amend the indictment, the State could have simply proceeded to trial on the original indictment." The Court of Appeals correctly noted that "[a] failure of proof as to some of the items listed in the original indictment would not have entitled [the defendant] to a judgment of acquittal if–as the jury clearly found at trial–the State's proof showed that the remaining items were worth $500 or more."

¶28. Unlike grand larceny, "[t]here is no requirement in the armed robbery statute that the property taken have any particular value." *Smith v. State*, 129 So. 3d 243, 246 (Miss. Ct. App. 2013) (citing Miss. Code Ann. § 97-3-29). Despite the difference, the same principle

described in ***Nations*** equally applies to the case *sub judice*. Here, the State, rather than moving to amend the indictment to remove the specific items taken from Jessica's house, simply proceeded to trial on the indictment. Moreover, a failure of proof as to some of the items listed in the indictment does not entitle Smith to a judgment of acquittal, because the jury clearly found at trial that the State's proof showed that personal property was taken from Jessica's house during the robbery, including any one or more of the following: $400 cash, a PlayStation, and a red designer belt.

¶29. Here, the evidence was sufficient to support Smith's conviction of armed robbery. At trial, Jessica identified Smith as one of the men who broke into her house, assaulted her, and robbed her. Jessica testified that Smith had held a handgun to her head and a knife to her neck. Jessica testified that Smith had hit her and had threatened to kill her. Jessica testified that Smith and the others had demanded money and other "random stuff" from her house. Jessica testified Smith and the other two men had taken $400 or more from her bedroom. Jessica also described the photo of her "bedroom where they took the money and stuff." Investigator James Jefferson testified that Jessica had reported that one of the items taken during the robbery was a red designer belt. Anderson testified that he had heard about the robbery and a couple of days later, Smith had told him he had just "hit a lick." Anderson testified that Smith had offered to sell him a PlayStation and red designer belt that Anderson thought Smith had obtained in the robbery.

## CONCLUSION

¶30. The evidence presented at trial was sufficient to prove that Smith took Jessica's personal property, including $400 cash, a red designer belt, and a PlayStation. Accordingly, we affirm the circuit court's judgment.

¶31. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**