803 So.2d 485 (2001)
Robert Earl COOLEY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00561-COA.
Court of Appeals of Mississippi.
October 16, 2001.
*486 Anthony J. Buckley, Laurel, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
Before KING, P.J., BRIDGES, and IRVING, JJ.
KING, P.J., for the Court:
¶ 1. Robert Earl Cooley was convicted of aggravated assault in the Jones County Circuit Court. He was sentenced to serve a term of eight years in the custody of the Mississippi Department of Corrections. Aggrieved by both the conviction and sentence, Cooley has filed this appeal and assigned the following as error: whether the verdict is against the overwhelming weight of the evidence and insufficient as a matter of law, to sustain a conviction for aggravated assault.

FACTS
¶ 2. During the late evening hours of February 2, 1998, Robert Earl Cooley drove to William Clark's home armed with a gun. Cooley believed that Clark had been stealing bricks from a construction site on his property. Cooley confronted Clark in the yard and allegedly struck him on the head and upper body with a weapon. Clark testified that he was not sure what he had been struck with, but believed that it had to be a gun. After the incident, Cooley drove away. Grady Marshall, Clark's neighbor, witnessed a portion of the confrontation. He helped Clark onto the porch where he called 911.
¶ 3. Upon returning home, Cooley called 911 and reported the incident and expressed a fear that he might have killed Clark. Officer Thad Windham, dispatched to Cooley's home to investigate this incident, saw Cooley exiting his mobile home with a hatchet in his hand. The hatchet *487 appeared to contain blood splatters, so Windham assumed it to be the assault weapon. Officer Windham read Cooley his Miranda rights and inquired about what had happened. Cooley said that he had assaulted Clark for stealing bricks from his property. Cooley was then taken into custody.
¶ 4. The hatchet was sent to the crime laboratory for DNA analysis. DNA testing later revealed that the blood on the hatchet did not belong to Clark. Pursuant to Miss.Code Ann. § 97-3-7(2)(b) (Rev. 2000)[1] Cooley was charged with aggravated assault by use of a deadly weapon identified as a hatchet. The relevant portion of the indictment read: "[t]hat Robert Cooley ... unlawfully, wilfully, and feloniously did cause serious bodily injury to one William L. Clark, by beating him in the face and head with a deadly weapon, to wit: hatchet...."
¶ 5. Cooley was convicted and sentenced to serve eight years in the custody of the Mississippi Department of Corrections. His motion for judgment notwithstanding the verdict, or alternatively, a new trial having been denied, Cooley now appeals his conviction and sentence.

ISSUE AND ANALYSIS
Whether the verdict is against the overwhelming weight of the evidence and insufficient, as a matter of law, to sustain a conviction for aggravated assault?
¶ 6. Cooley contends that since there was no evidence that he struck Clark with a hatchet, as charged in the indictment, the verdict was against the overwhelming weight of the evidence and insufficient, as a matter of law, to sustain a verdict of guilty. As evidence of this insufficiency, Cooley points to (1) Clark's uncertainty about what he was hit with and (2) the results of the DNA test, which proved that Clark's blood was not on the hatchet. Cooley, therefore, suggests that this case should be reversed and remanded for consideration of the lesser-included offense of simple assault.
¶ 7. However, when determining whether a jury's verdict is against the overwhelming weight of the evidence, we accept as true the evidence which supports the verdict. Isaac v. State, 645 So.2d 903, 907 (Miss.1994). Reversal is proper only if we are convinced that the trial court abused its discretion in failing to order a new trial. Id. Consistent with this standard, we find the following evidence on the issue of aggravated assault with a hatchet: (1) Clark was struck and injured by Cooley, (2) he did not know whether Cooley struck him with his fist or some instrumentality, (3) the only time a hatchet was observed was when an officer came to Cooley's home and saw him with a hatchet in his hand, (4) the laboratory analysis established that Clark's blood was not present on the hatchet taken from Cooley, (5) Clark saw Cooley with a gun in his hand, and (6) Clark kept his eye on the gun and was sure Cooley did not strike him with that. When this evidence is reviewed in the light most favorable to the verdict, there is not substantial evidence upon which to predicate a verdict of aggravated assault. We conclude that the weight of the evidence is so against the verdict that an unconscionable injustice occurred. McClain v. State, 625 So.2d 774, 781 (Miss.1993).
¶ 8. Having addressed the matter of weight of the evidence, we are also asked *488 to consider the sufficiency of the evidence. When presented with the question of the sufficiency of evidence, the scope of review by an appellate court is limited. Benson v. State, 551 So.2d 188, 192 (Miss.1989). That limited scope of review was reiterated in Swinford v. State, wherein the Mississippi Supreme Court stated:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with jury's verdict is quite limited. We proceed by considering all of the evidencenot just that supporting the case for the prosecutionin the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
Swinford v. State, 653 So.2d 912, 914 (Miss.1995) (citations omitted).
¶ 9. Our application of this standard to the facts of this case leads to the unavoidable conclusion that the record contains insufficient evidence upon which a reasonable person might find Cooley guilty of aggravated assault.
¶ 10. The indictment charged Cooley with aggravated assault by use of a deadly weapon, identified as a hatchet, pursuant to Miss.Code Ann. § 97-3-7(2)(b) (Revised 2000). There is no evidence of the use of a deadly weapon, to make this aggravated assault, pursuant to section 97-3-7(2)(b).
¶ 11. According to the dissent, "the victim stated that he clearly saw Cooley with a pistol and that he was holding something else as well." The victim's actual testimony on direct examination on this issue was as follows:
Q. Did you see anything in the truck before he got out?
A. He had a gun in his right hand.
Q. Where did you see that in the truck?
A. He had it in his hand upon the steering wheel. Then he said that he was going to kill me. And he opened the door back and I had to step back out of the way of the door. As I did that, I just caught a motion and he hit me with something.
Q. With that hand? With the hand he had the gun in?
A. No, I don't believe so.
Q. Did you see if he had anything in his other hand?
A. No, I did not.
Q. Could you see his other hand or was it hidden from your view?
A. His left hand was hidden from view. I was concentrating on the gun.
Q. I understand. All right, then what happened when he said he was going to kill you?
A. As he opened the door and got out of the truck he hit me with something. I don't know what. Then the next thing I knew, I was on the ground and he was on me, beating me.
Q. Were you able during this confrontation, Mr. Clark, to determine what he was beating you with?
A. No, ma'am. I was not.
*489 ¶ 12. The State elected to indict Cooley for aggravated assault with a deadly weapon. It was therefore incumbent upon the State to either prove that an instrument which by its very nature is a deadly weapon was used, or that an instrument, was used which, the jury, as finder of fact, could determine was a deadly weapon. Rushing v. State, 753 So.2d 1136 (¶ 48) (Miss.Ct.App.2000).
¶ 13. There is no testimony that a hatchet or any other deadly weapon was used. The dissent seems to concede this point, but glosses over it by saying, "Apparently use of a hatchet was consistent with Clark's injuries."
¶ 14. That assumption finds no support in the record. Indeed the fallacy of this assumption can be seen by viewing the State's exhibit 4, 5, 6, 7 and 8, which are black and white photos of Clark's injuries. The injuries reflected by these exhibits are not inconsistent with the injuries which could be inflicted by a human fist.
¶ 15. The evidence at best will only sustain a conviction of simple assault. Shields v. State, 722 So.2d 584 (¶ 17) (Miss. 1998). Accordingly, this Court reverses and renders the conviction of aggravated assault, and remands this case for sentencing on the conviction of the lesser-included offense of simple assault.
¶ 16. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED AND RENDERED; REMANDED FOR SENTENCING ON SIMPLE ASSAULT ONLY. COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
BRIDGES, THOMAS, IRVING, CHANDLER AND BRANTLEY, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., LEE, AND MYERS, JJ.
SOUTHWICK, P.J., dissenting:
¶ 17. The majority states that there was no evidence of the use of a deadly weapon presented at trial. I disagree. The problem is rather different, namely, that though the evidence was overwhelming that an instrument capable of causing serious bodily injury was used against this victim, there was no clarity to what instrument it was. With respect, since I find that the majority is answering the wrong questions, I write separately to indicate why we should affirm.
¶ 18. The victim Clark certainly could be found to have suffered serious bodily injury. His ear was partially detached, and he received several stitches on top of his head. Pictures of those injuries were introduced into evidence. As I will summarize below, the victim's testimony was that his ear was "mostly torn off; all the top of my head and everything...." Clark testified that he assumed that Cooley had beaten him with a gun; he did not assume that he was being hit just with a fist. One witness stated that the victim was being struck by something silver in Cooley's hand. The jury was entitled to find both that the injuries were serious and that they were not caused by a fist.
¶ 19. It would have been possible then to indict Cooley for aggravated assault for having caused serious bodily injury, without even charging that he had used a deadly weapon. Miss.Code Ann. § 97-3-7(2)(a) (Rev.2000). Other elements of the crime would then have had to be shown, including that the acts were purposeful and extremely indifferent to the value of human life. Therefore, even under the *490 majority's interpretation, there are circumstances in which someone who causes serious bodily injury with an unknown instrument may be convicted of aggravated assault.
¶ 20. My review of the case starts with the fact that the State imposed on itself an evidentiary burden beyond what the statute required. The indictment charged Cooley with having willfully caused serious bodily injury to Clark by beating him on the face and head with a deadly weapon, specifically a hatchet. Under Section 97-3-7(2)(a), it is only necessary to charge and prove that Cooley purposefully, knowingly or recklessly caused serious bodily injury under circumstances manifesting extreme indifference to human life, i.e., no use of a deadly weapon is required. On the other hand, Cooley also could have been charged under section 97-3-7(2)(b) as causing bodily injury by purposeful, knowing or reckless use of a deadly weapon, i.e., no "serious" injury is required. Instead, the indictment combined these elements of the crime. The central instruction for the jury explaining the crime also combined these elements. Therefore, the indictment charged more than it needed to by combining the separate means of committing this crime found in the two subsections of section 97-3-7(2).
¶ 21. The relationship for purposes of indictment between subsections 2(a) and 2(b) of the assault statute has been the subject of several Supreme Court pronouncements. The most significant found that when a grand jury returned an indictment under one of the subsections, it was a matter of substance and not form to amend the indictment to express the elements of the other subsection. Quick v. State, 569 So.2d 1197, 1199 1200 (Miss. 1990).
¶ 22. Our case raises the opposite. Since the State included the elements of both subsections in the indictment, could they at trial have amended the indictment to remove the excess? It could be argued that such a revision would be the removal of surplusage. In one precedent under an early version of the State's criminal statutes on controlled substances, there was not yet a provision that made possession of illegal drugs with intent to sell them a separate crime. That was likely a legislative oversight, and the statute was later changed. The Supreme Court found that the indictment's language that the accused possessed more than an ounce of marijuana "with intent to sell" could be stricken at trial, since the intent element was surplusage. Schloder v. State, 310 So.2d 721, 723-24 (Miss.1975). See also Sullivan v. Cook, 218 So.2d 879, 880-81 (Miss.1969)(allegation as to the ownership of a building that has been burglarized is surplusage, since showing who occupied the building is sufficient); Simmons v. State, 109 Miss. 605, 68 So. 913, 915 (1915) (allegation of "without her consent" is surplusage in indictment for statutory rape). Perhaps "with a deadly weapon" could have been deleted from this indictment as surplusage, but regardless, no such motion was made.
¶ 23. I also note that there is recent Supreme Court authority that does not cite any precedents on surplusage in indictments, that held an indictment's reference to the value of property had to be proven even though value was not an element of the offense.
Having specifically informed Richmond of the offense charged, as well as the detailed code section number, the State handicapped itself through this indictment by adding an unnecessary element of proof. Richmond's objection to the State's attempted deletion of this surplusage was [properly] sustained by the trial court.
*491 Richmond v. State, 751 So.2d 1038, 1046 (Miss.1999). The court affirmed because the State proved value after they were put to the test. Id. at 1043. The pre-existing law on surplusage, which was not cited and therefore not overruled, suggests Richmond is incomplete in its analysis.
¶ 24. In light of Richmond, though, I concede for present purposes that the indictment itself can require beyond the right to amend more proof than does the criminal statute itself. Whether that includes proving that a hatchet was the deadly weapon used in an assault as opposed to some other deadly weapon, is the question before us. My answer is that when the precise weapon is unknown, the State still can charge and convict for use of a deadly weapon.
¶ 25. A "deadly weapon" is some instrument that was capable of causing and was used in a manner that reasonably could cause serious bodily injury. Griffin v. State, 540 So.2d 17, 19 (Miss.1989). The possible weapons here were a stick (Cooley's statement), a bright silver object (a witness's testimony), a hatchet (what Cooley was holding when he was arrested), or a gun (the victim saw a gun in Cooley's other hand and assumed that a gun was also used to hit him). It is fair to say that no witness except for Cooley was certain, and whether Cooley told the truth was for the jurors to decide. What follows is a synopsis of the evidence presented the weapon used.
¶ 26. William Clark (victim): Clark testified that Cooley had a gun in his right hand, that Cooley stated he was going to kill Clark and then struck him "with something" in Cooley's left hand. Clark testified that Cooley's left hand was not in his line of sight as he was concentrating on the gun in Cooley's right hand. Clark simply did not know what hit him but assumed it was a gun. Clark also testified that he never saw a hatchet and when asked if he knew Cooley had a hatchet responded, "No, ma'am. He didn't."
¶ 27. Clark testified that his injuries were as follows: "Well, my ear was mostly torn off; all the top of my head and everything; my wrist, I believe, I suppose from holding my hands up. I still have trouble using these. But that is most of it, in my head." The State introduced into evidence photographs of Clark's injuries to his ear, head, face, and wrist.
¶ 28. Grady Marshall (Clark's neighbor): Marshall testified that he saw Cooley "swinging something silver in his hand" while Clark was on the ground. Marshall testified that he was about 30 yards away from the altercation between Clark and Cooley.
¶ 29. Thad Windham (Investigating Officer): Windham testified that he was in the dispatcher's office when the call was received that Clark had been assaulted. Upon arriving at Cooley's trailer, Windham saw Cooley exit his trailer carrying what appeared to be a hatchet in his right hand. Cooley placed the hatchet in the tool box of the truck. Windham retrieved the hatchet from the truck with Cooley's permission.
¶ 30. Six days later, Windham took Cooley's statement. Windham asked Cooley what was in his hand when he exited his truck at Clark's house. Cooley stated that "Uh, well I don't, I can't remember what I had now. I can't remember what I had. I don't know where I had my uh, my, my I had my hatchet, but I didn't have, I didn't have that hatchet then." Cooley stated that he thought he had a stick in his hand. Cooley stated that he struck Clark with his hand. Cooley stated that he made no attempt to wash the hatchet taken by Windham and that the blood on the hatchet *492 was his and came from a wound on his hand.
¶ 31. Cooley seemed to admit that he got the hatchet out of his truck before he left Clark. "I got the hatchet outa the truck `cause I thought he was gonna come back some more but he stood up and walked and I left." Cooley stated that the hatchet was in the toolbox of the truck while at Clark's.
¶ 32. Windham testified that none of the witnesses mentioned use of a hatchet during the assault. Windham testified that no gun was ever recovered. Windham testified that there was "some time difference" between the receipt of the call and his arrival at Cooley's house but he could state how many minutes had elapsed.
¶ 33. Shannon Allday (Dispatcher): Clark called and stated that he had been beaten by Cooley with a gun. Cooley made a separate call to the dispatcher and stated that "you need to get somebody out here. I think I killed a man."
¶ 34. Robert Cooley (Defendant): Cooley testified that the hatchet in evidence was not the same hatchet that Windham took from him. Cooley testified that he did not assault Clark with a hatchet or pistol. According to him, the hatchet was in the toolbox of the truck during the assault and he only got it out when he went back home. Cooley testified that he only slapped Clark a couple of times. Cooley also testified that he had about three hatchets in the truck. Cooley testified that he did not sever Clark's ear and that Clark must have done so while riding his four-wheeler.
¶ 35. A reasonable conclusion from this evidence is that serious bodily injury was caused by Cooley's use of an unknown and unknowable instrument. How this uncertainty fits within the requirements of charging a crime, and then the effect of any variance between the charge and the proof, are our questions on appeal.
¶ 36. We might usefully begin by marking the constitutional boundaries. The United States Supreme Court has prescribed Federal Rules of Criminal Procedure. One of them directly removes any need to prove the precise means that were used to accomplish a crime:
It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.
Fed. R.Crim. Proc. 7(c)(1). Under the same reasoning as undergirds this Rule, the Supreme Court has recently described with approval a much earlier precedent:
In Andersen v. United States, 170 U.S. 481, 18 S.Ct. 689, 42 L.Ed. 1116 (1898), for example, we sustained a murder conviction against the challenge that the indictment on which the verdict was returned was duplicitous in charging that death occurred through both shooting and drowning. In holding that "the Government was not required to make the charge in the alternative," id., at 504, 18 S.Ct., at 694, we explained that it was immaterial whether death was caused by one means or the other.
Schad v. Arizona, 501 U.S. 624, 631, 111 S.Ct. 2491, 2496-97, 115 L.Ed.2d 555 (1991). The court concluded that it was unnecessary for jurors "to agree upon a single means of commission, any more than the indictments were required to specify one alone." Certainly "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." Id. at 631-32, 111 S.Ct. at 2497, quoting McKoy v. North Carolina, 494 U.S. 433, 449, 110 *493 S.Ct. 1227, 1236-1237, 108 L.Ed.2d 369 (1990).
¶ 37. State procedural rules may require more, but it is important to begin with a realization that no constitutional requirement exists to identify the precise deadly weapon that was used.
¶ 38. There is no doubt that all the essential elements of the offense must be stated in the indictment. Peterson v. State, 671 So.2d 647, 652-53 (Miss.1996). A Mississippi court rule states that "a plain, concise and definite statement of the essential facts constituting the offense charged" must appear in the indictment, a requirement that uses almost identical language to that found in Federal Rule of Criminal Procedure 7(c)(1). URCCC 7.06. The State rule then provides that this statement should "fully notify the defendant of the nature and cause of the accusation." Id. That latter language might be seen as substituting for the federal provision that the indictment may assert that "the means by which the defendant committed the offense are unknown...." If so, I do not find that it creates a meaningfully different obligation, as I now explain.
¶ 39. The need to allege the "nature and cause of the accusation" appears in each Mississippi constitution: "in all criminal prosecutions the accused shall have a right ... to demand the nature and cause of the accusation," MISS. CONST. art. III, § 26 (1890) & MISS. CONST. art. I, § 7 (1869); "in all criminal prosecutions, the accused hath a right to demand the nature and cause of the accusation," MISS. CONST. art. I, § 10 (1817 & 1832). Therefore, when the Uniform Circuit and County Court Rules employ the "nature and cause" requirement, this should be read consistently with the jurisprudence on what is required by the same language in the constitution.
¶ 40. What is meant by the "nature and cause of the accusation" has not been discussed in many precedents, though the language is often cited. One of the more thorough explanations of the requirement appeared in a case similar to the present one:
This provision of the Constitution [art. 3, § 26] has a twofold purpose. It is to secure to the defendant, charged with crime, such a specific description of the offense as will enable him to make preparation for his trial, and also such an identification of the offense as will insure him against a subsequent prosecution therefor. [citations omitted.]
In 5 C.J. 774, § 296, the principle is stated thus:
"It is generally held that where the means and details of the assault and battery are set out the proof must substantially conform thereto, as the means and details cannot be rejected altogether as surplusage, and the variance would be fatal, especially where an assault is not in the first instance charged, followed by a description of the manner of its commission, but it is merely charged that an assault was made by certain means, although in a few jurisdictions it has been held that the description may be rejected as surplusage. Hence, it has been held that, where the indictment alleges that the weapon used was a knife, the proof must show that the offense was committed with a knife or other instrument falling within its class. But precise conformity in every particular as to the means and details of the assault is not required; it is sufficient if the proof conforms in general character and operation with the averments of the indictment. And where an indictment charges an assault to have been committed with several different weapons, it is not necessary to prove that defendant *494 used all the weapons described. The indictment will be sustained by proving that one of the instruments was used as alleged."
Harrell v. State, 148 Miss. 718, 114 So. 815, 815-16 (1927).
¶ 41. Two different issues are being addressed in that excerpt. One is that the notice given the accused by the indictment of what he has been charged must be sufficient to allow him to prepare his defense. The other matter is "that where the means and details" of the charge are set out with particularity, then the proof must "substantially" conform to the details. I interpret that as holding the prosecution to the obligation of offering proof substantially the same as the factual details set out in the indictment even if some of the details were unnecessary to allege in the indictment.
¶ 42. In Harrell, the accused had been indicted for assault with a pistol. The evidence indicated that the assault might instead have been with fists. The court found that since the indictment alleged assault with one weapon and the evidence supported the use of "a weapon entirely different from that set out in the indictment," the conviction could not stand. Harrell, 114 So. at 815.
¶ 43. A different spirit animated another precedent handed down the same year as Harrell. There the Supreme Court held that when a person was charged in the indictment with having committed an assault with a wrench, there was no fatal variance with the evidence that proved the assault had been with a stick, "which the jury was warranted in believing was a deadly weapon." Bowers v. State, 145 Miss. 832, 835, 111 So. 301 (1927). Perhaps, however, the distinction between the two instruments in Bowers, a wrench and a stick, was not considered as significant as in Harrell, when the two choices were just hitting someone with fists and using a weapon.
¶ 44. Bowers was cited two years later to sustain an amendment to an indictment that had originally charged an assault with brass knuckles, but was changed when the evidence revealed that a crutch was the weapon used. Roney v. State, 153 Miss. 290, 296-97, 120 So. 445, 446 (1929). The court said that a variance between charge and evidence was not fatal unless the discrepancy "is material and affects the substantive rights of the defendant." Id.
¶ 45. What insights I gain from these precedents is that the facts of each case control the validity of the State's charging use of one weapon and either proving another or not being able precisely to prove what was used. Bowers, Harrell, and Roney all acknowledge that a variance may occur and conviction still result. The limits include that the weapon actually proved must not be "entirely different" from the one alleged in the indictment and that the accused must not be prejudiced by the variations between the charge and the proof.
¶ 46. There is a tension in play here, between the necessary specificity of an indictment and variances in proof that arise at trial. Whether the defendant has a right to complain about an evidentiary variance may best be explained by examining what the purpose is for an indictment:
The true test is not whether the indictment could possibly be made more definite and certain, but whether it contains every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. An additional test is whether, in case other criminal proceedings are taken against the defendant based on the same matters, the record shows with accuracy to what extent he may plead a *495 former acquittal or conviction in bar of the later proceedings.
Hamilton v. State, 197 So.2d 469, 474 (Miss.1967).
¶ 47. I find that the indictment when it charged use of a hatchet, informed Cooley of sufficiently specific elements of the offense to permit him to prepare his case. The difference between the possibilities herea hatchet, a pistol, a stick, or just a shiny and presumably metal objectare no greater than the differences in Bowers and Roney, and less than the difference between fists and a pistol in Harrell. The uncertainty about the instrument used could not affect Cooley's ability to claim prior jeopardy if he was later accused again of assaulting this same victim in the same events on the same day. Thus, the only real question is whether the uncertainty about the weapon meant that Cooley was not given sufficient notice to prepare his defense adequately.
¶ 48. The evidence revealed beyond question that Cooley had a hatchet at least in his vehicle when he went to the victim's house. The victim stated that he clearly saw Cooley with a pistol and that he was holding something else as well. Cooley was aware in advance of trial that the State Crime Laboratory had determined that the blood on the hatchet was not the victim Clark's. Of course, that did not mean the hatchet was not the weapon used. That Cooley wiped Clark's blood off the hatchet was a reasonable inference had the jury had direct evidence that the hatchet was used on Clark. Cooley said that he had cut himself with the hatchet, so there was direct evidence that Cooley's own blood was on the hatchet, blood that Cooley said would not have appeared on the hatchet until after the events involving Clark. Of course, no one testified that the hatchet was used. Apparently, use of a hatchet was consistent with Clark's injuries.
¶ 49. So when the State rested, evidence existed and was quite weighty on all of the elements of the offense, including that Clark was struck with an instrument that was being used in a manner likely to cause serious bodily injury. Using a hatchet as opposed to a gun is not an "element of the offense," though it is an item of proof and was set out in the indictment. As to the elements of the offense, there was strong evidence of serious bodily injury. Thus, whatever the instrument was, once the jury determined that Cooley had caused Clark's injuries, the defendant indisputably had used an instrument capable of causing such injuries. That means he used a deadly weapon.
¶ 50. If the victim had the good fortune not to have been seriously injured, then I would find that the doubts about what was being used to inflict the injuries in an aggravated assault a much more problematic matter. If there is no evidence from which jurors could reliably determine what kind of weapon was used, and if there were no serious injuries, then the State would fail to prove that a "deadly weapon" was used. Quite differently from my hypothetical situation, here the evidence was more than sufficient to show an object capable of causing serious bodily injury was used.
¶ 51. What in effect my interpretation of the precedents means is that despite the failure of the circuit court rules to include a provision such as found in Federal Rule of Criminal Procedure 7(c), our jurisprudence both constitutionally and procedurally recognizes that within some limits a conviction may be obtained even though the precise means may be unknown that a clever or just fortunate defendant used to commit an offense. The fortuity here for Cooley was that distance or perspective *496 hindered the few witnesses who saw the events underlying the crime.
¶ 52. What then to do with this case? I find no problem with the sufficiency or weight of the evidence. I do find plain error, though, in the instruction given the jury about the deadly weapon. Plain error is that which affects fundamental rights of an accused but was not made the basis of an objection at trial that has been properly preserved for appeal. M.R.E. 103(d). The law that I think controlled the issue before the trial court was that the jury was entitled to convict if it found that the weapon used on Clark was a deadly weapon, and it was either a hatchet or an instrument that was similar to, or as stated in Harrell, not entirely different from, a hatchet. Harrell, 114 So. at 815.
¶ 53. No instructions setting out requirements such as I have discussed here were requested or given the jury. I at least agree that the evidence that the instrument used had to have been a hatchet was too insubstantial to convict on the instructions given. What tended to support that a hatchet was used was that Cooley, who had just called the police to say that he had killed a man and therefore presumably was well-focused on the matter when police shortly thereafter arrived, was holding a hatchet in his hand. The absence of the victim's blood on the hatchet and the failure of the State to find any witness who saw the hatchet being used, meant that the hatchet was no more likely as the weapon than certain other objects.
¶ 54. Yet, I find sufficient and weighty evidence that a hard and shiny object was used to bludgeon the victim on the head and cause serious injuries. This may suggest that had the jurors been properly instructed, they all the more easily would have convicted. I do not believe that we should make that assumption. Perhaps the jurors on this evidence and instructions were reluctant to acquit. That does not mean that with a better explanation of the deadly weapon legal principles to guide them through the obvious problems with the hatchet evidence, that they still would have convicted. A trial should determine that.
¶ 55. Some direction should be given the jurors on what it means for one weapon not to be entirely different from another. I note one precedent that used the Mississippi Bowers opinion and also precedents from other States to conclude that the issue is whether the deadly weapons are "of the same generic character." State v. Killenger, 193 Conn. 48, 475 A.2d 276, 280 (1984), also citing 3 WHARTON'S CRIMINAL PROC. (12th ed.1975) § 506. The Wharton treatise cited Bowers as one of its authorities and went on to explain that this required that "the nature of the violence and the injury received were the same" with the various weapons. 3 WHARTON'S CRIMINAL PROC. § 506 at 403 & n. 24. Jurors could be instructed that they must find that the instrument used to inflict serious bodily injury was a hatchet or some other instrument used in a similar way and causing similar injuries.
¶ 56. I would reverse and remand for a new trial.
McMILLIN, C.J., AND LEE AND MYERS, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] Miss.Code Ann. § 97-3-7(2)(b) reads as follows: "A person is guilty of aggravated assault if he ... attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm...."