# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01494-COA

**RASHAD J. SMITH A/K/A RASHAD JAMALE SMITH A/K/A RASHAD SMITH A/K/A TWIN**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/16/2017 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA AINSWORTH |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/28/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND C. WILSON, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Rashad Smith was tried in Lincoln County Circuit Court on a two-count indictment. Prior to trial, the court granted the State's motion to amend the indictment to allege Smith's habitual-offender status, but a written order amending the indictment was not entered. A nolle prosequi order was subsequently entered on Count I of the indictment, and the jury found Smith guilty on Count II (unauthorized possession of a cell phone in the Lincoln County jail). The trial court sentenced Smith to serve fifteen years, day for day, as a habitual offender.

¶2.     On appeal, Smith asserts that (1) his conviction should be reversed and rendered because the State's evidence was insufficient for a conviction under the indictment as drafted, or, alternatively, he is entitled to a new trial because the verdict was contrary to the overwhelming weight of evidence; and (2) he received ineffective assistance of counsel because the indictment in this case was never properly amended to authorize sentencing as a habitual offender and his counsel failed to object, thereby waiving this issue for appellate review.  We find no merit to Smith's first assignment of error, and we deny Smith's ineffective-assistance-of-counsel claim without prejudice to his right to pursue relief on this alleged error in a petition for post-conviction relief.

## I.     STATEMENT OF FACTS AND COURSE OF PROCEEDINGS

¶3.     On August 16, 2017, Smith was tried in Lincoln County Circuit Court on a two-count indictment. Count I of the indictment charged Smith with possession of marijuana in the Lincoln County jail.  After the jury deadlocked on Count I, the State requested and was granted a nolle prosequi order on that count.  Count II of the indictment charged Smith with unauthorized possession of a cell phone in the Lincoln County jail, in violation of Mississippi Code Annotated section 47-5-193 (Rev. 2015).  The jury found Smith guilty on Count II, and he was sentenced to serve fifteen years as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015).

¶4.     The original indictment did not allege that Smith was a habitual offender.  Prior to trial, the State moved to amend the indictment to allege Smith's habitual-offender status. That motion was heard on June 26, 2017.  At the hearing, the trial court ruled on the record

2

that the State met its burden for the indictment to be amended to include a habitual-offender sentencing enhancement, but the record reflects that no order to that effect was entered.[1]

¶5.     At the one-day trial held on August 26, 2017, the State's witness, Correctional Officer Larry Morris, testified that on September 28, 2015, Rashad Smith "turned himself in" to the Lincoln County jail because his twin brother, Rashan, was mistakenly in jail instead of Rashad.  On cross examination, Officer Morris was asked whether he told Smith what he could and could not bring to the jail when Smith phoned in to advise that he was turning himself in.  Officer Morris responded, "No," and then he stated that Smith had "been down [to the jail] before so I didn't have to [give him any instructions]."

¶6.     Officer Morris testified that when Smith arrived at the jail, Smith was brought in through one locked door and was taken to the booking area to be processed.  He further testified that before he (Morris) was able to get Smith booked in, Smith grabbed a jail uniform off of a shelf along with a mat that the jail provides, went in another area, and changed his clothes.  According to Officer Morris, Smith was in "a hurry to get dressed out and to go upstairs."  Officer Morris said he told Smith that before he could go upstairs, Morris needed to finish booking him and that he needed to be searched.  At that point, Officer Morris testified, Smith put his belongings on the counter, and several items that were rolled up with the jail-issued mat started falling out, including two cell phones and some marijuana.  Officer Morris turned these items over to Brookhaven Police Investigator Lisa

---

[1] The original indictment also incorrectly entered the name "Ryan Farley Lewis" as Smith's name in Count II, rather than "Rashad J. Smith."  The State separately moved to amend the indictment to correct this error, and a written order was entered amending the indictment.

Jackson who turned them over to Lincoln County Chief Deputy Johnny Hall.

¶7. The State's witness, Chief Deputy Johnny Hall, testified that he investigated the September 28, 2015 incident, and that when he interviewed Smith, Smith told him that he was bringing the cell phones in with "the help" of Officer Morris. Hall further testified that this allegation was never confirmed. The State also established through Chief Deputy Hall's testimony that the Lincoln County jail is a correctional facility in Brookhaven, Lincoln County, Mississippi.

¶8. At the close of the State's case, defense counsel moved for a directed verdict, which the trial court denied. Smith did not testify at trial, and the defense presented no other witnesses.

¶9. The court instructed the jury which found Smith guilty of possession of a cell phone in a correctional facility under Count II of the indictment.

¶10. Following the announcement of the jury verdict, the trial court proceeded with the sentencing hearing. At that hearing, the trial court read the jury's verdict on the record and then stated that at "a motion hearing . . . on June 26th of 2017, the [c]ourt found beyond a reasonable doubt that Mr. Smith was an habitual criminal within the meaning of section 99-19-81." Defense counsel stated on the record that he had no objection to sentencing proceedings going forward, and there is no indication in the record that defense counsel made any objection to the absence of a written order allowing the amendment to the indictment to reflect Smith's habitual-offender status. The trial court sentenced Smith to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), to be served day for day

4

pursuant to section 99-19-81. Following the denial of his motion for a judgment notwithstanding the verdict (JNOV), or, alternatively, for a new trial, Smith appeals.

## II. LAW AND ANALYSIS

### A. The State's Alleged Failure of Proof

¶11. Smith asserts that the State failed to prove two statutory elements of section 47-5-193 and one non-statutory factual allegation charged in Count II of the indictment, and, therefore, the trial court erred in denying his JNOV motion, or, alternatively, the trial court erred in denying his motion for a new trial. We find that these assertions are without merit because we find that the State was not required to prove these elements, as discussed below.

### 1. The Statutory Elements Under Section 47-5-193

¶12. Count II of Smith's indictment charged him with violating section 47-5-193. In *McCollum v. State*, 81 So. 3d 1191 (Miss. Ct. App. 2012), we examined section 47-5-193 and held that "[i]t is clear the statute considers that the possession of contraband and the taking of contraband are two separate crimes." *Id.* at 1192 (¶6). We found that the first sentence in section 47-5-193 "makes possession of contraband unlawful." *Id.* The statute provides:

> It is unlawful for any officer or employee of the department, of any county sheriff's department, of any private correctional facility in this state in which offenders are confined, of any municipal or other correctional facility in this state, or for any other person or offender to possess, furnish, attempt to furnish, or assist in furnishing to any offender confined in this state any . . . cell phone or any of its components or accessories to include, but not limited to, Subscriber Information Module (SIM) cards or chargers.

Miss. Code Ann. § 47-5-193. The second sentence of section 47-5-193 makes the "taking of contraband unlawful." *McCollum*, 81 So. 3d at 1192 (¶6). The statute provides:

It is unlawful for any person or offender to take, attempt to take, or assist in taking any . . . cell phone or any of its components or accessories to include, but not limited to, Subscriber Information Module (SIM) cards or chargers on property within the state belonging to the department, a county, a municipality, or other entity that is occupied or used by offenders, except as authorized by law.

Miss. Code Ann. § 47-5-193. Count II of Smith's indictment charged as follows:

[O]n or about September 28, 2015, in Lincoln County, Mississippi and within the jurisdiction of this court, Rashad J. Smith did wilfully, unlawfully, feloniously and knowingly possess a cell phone, to wit: a Nokia Smartphone, black in color bearing the IMEI number 353047069216952 in the Lincoln County Jail, a correctional facility, in Lincoln County, Mississippi, at a time when [Rashad J. Smith] was an inmate housed in the aforementioned correctional facility, contrary to and in violation of Section[] 47-5-193 of the Mississippi Code of 1972, this being count two of the indictment….

¶13. Smith asserts that the State failed to prove two statutory elements under section 47-5-193, namely, that the Lincoln County jail was "property belonging" to Lincoln County and that the property was "occupied or used by offenders." These statutory elements are found in the second sentence, not the first sentence, of section 47-5-193. After our review of the record, including Count II of the indictment, the applicable jury instruction setting forth the counts contained in the indictment, and the jury's verdict,[2] we determine that Smith was indicted and convicted under the first sentence of section 47-5-193, namely "possession of a cell phone" in a correctional facility. We therefore find that the State was not required to prove the two statutory elements addressed in Smith's assignment of error because these elements are not essential to the "possession of a cell phone" crime charged under the first

[2] The jury's verdict, announced in open court, was as follows: "We, the jury, find the Defendant, Rashad J. Smith, guilty of possession of a cell phone in a correctional facility as [to] Count 2 of the indictment."

sentence of section 47-5-193.

¶14.  *McCollum* is instructive on this issue.  In that case McCollum argued that his indictment was defective because it merely stated that he "did wilfully, unlawfully, feloniously, and without authority have in his possession an unauthorized electronic device, cell phone, or other contraband item, to-wit: one (1) cell phone and two (2) SIM cards[,]" and did not include, among other information, the phrase "on property belonging to the Department of Corrections." *McCollum*, 81 So. 3d at 1192 (¶5).  We rejected McCollum's argument as follows:  "McCollum was charged with possession of contraband; therefore, the indictment did not need to include the essential elements for the crime of taking of contraband. The indictment properly charged McCollum with the essential elements of possession of contraband in a correctional facility.  Accordingly, this issue is without merit." *Id.* at 1192 (¶7).

¶15.  Based on the same reasoning, we find in this case that section 47-5-193 is not ambiguous and that a plain reading of the first sentence of section 47-5-193 shows that it does not require proof that the jail belonged to Lincoln County or that it was occupied or used by offenders.  Although the first sentence of section 47-5-193 contains the phrase "in which offenders are confined," that language modifies "officer or employee" and not "any other person or offender."  We therefore find no merit in Smith's assertion that the State was required to prove these two statutory elements under section 47-5-193.

### 2. The Factual Allegation in the Indictment that Smith Was an "Inmate" in the Lincoln County Jail

¶16.  Smith also asserts that because Count II of the indictment provided that Smith was an

7

"inmate housed" in the Lincoln County jail, the State was required to prove that Smith was an inmate at the jail, even though this is not a statutory element under section 47-5-193. We recognize that in *Richmond v. State*, 751 So. 2d 1038 (Miss. 1999), which is a case Smith relies upon for this proposition, the Mississippi Supreme Court held that an indictment's reference to the value of property had to be proven even though value was not an element of the offense charged. *Richmond*, 751 So. 2d at 1045-46 (¶¶17-19). The supreme court recently distinguished *Richmond* in *Smith v. State*, 250 So. 3d 421 (Miss. 2018), and we find that the *Smith* court's analysis supports our determination here that the State was not required to prove that Smith was an "inmate" in the Lincoln County jail in this case.

¶17.    In *Smith* the defendant was charged with armed robbery and that the indictment listed the specific property stolen. *Smith*, 250 So. 3d at 424-25 (¶13). Relying on *Richmond*, the defendant (Rickie Omar Smith) argued that the State increased its burden by listing the stolen property in the indictment, and because it did so, the State was required to prove that Smith stole each specified item. *Smith*, 250 So. 3d at 426 (¶17). The supreme court disagreed, beginning its analysis by distinguishing *Richmond*. *Smith*, at 426-29 (¶¶18-28).

¶18.    In *Richmond*, the *Smith* court explained that the defendant was charged with motor vehicle theft, but the indictment included the value of the vehicle allegedly stolen (which is not an element of the crime of motor vehicle theft) but is an essential element for the different crime of grand larceny. *Smith*, 250 So. 3d at 426 (¶18) (citing *Richmond*, 751 So. 2d at 1042 (¶¶8-9)). As the *Smith* court explained, the *Richmond* court affirmed the trial court's decision to require the State to prove the value element, recognizing that the State had

"'handicapped itself through the indictment by adding an unnecessary element of proof.'" *Smith*, 250 So. 3d at 427 (¶21) (quoting *Richmond*, 751 So. 2d at 1046 (¶19)).

¶19.    Comparing the circumstances before it to those before the *Richmond* court, the *Smith* court observed that "[u]nlike the substantive change described in *Richmond*, where the value of the motor vehicle arguably changed the crime from motor vehicle theft to grand larceny, the identity or lack thereof of personal property in an armed robbery does not change the crime." *Smith*, 250 So. 3d at 427 (¶22). Accordingly, the *Smith* court determined that the State was not required to prove that every item listed on the indictment had been taken by Smith or his accomplices. *Id.* at 427-29 (¶¶22-30).

¶20.    We find that the same analysis applies here. Section 47-5-193 makes it unlawful "for any . . . person or offender" to possess a cell phone in a correctional facility. Miss. Code Ann. § 47-5-193; *see Houston v. State*, 50 So. 3d 157, 159 (¶9) (Miss. Ct. App. 2014). Whether Smith was an "inmate" at the facility or simply a "person" at the facility does not change the crime charged—possession of a cell phone in a correctional facility. We therefore find that the State was not required to prove that Smith was an "inmate" at the Lincoln County jail because this factual allegation does not change the crime charged. *Smith*, 250 So. 3d at 427-29 (¶¶22-30).

¶21.    Smith also cites *Cooley v. State*, 803 So. 2d 485 (Miss. Ct. App. 2001), as support for his assertion that the State must prove that Smith was an inmate because that term was used in the indictment. We find, however, that *Cooley* does not support Smith's argument.

¶22.    In *Cooley*, the defendant "was charged with aggravated assault by use of a deadly

9

weapon identified as a hatchet," pursuant to Mississippi Code Annotated section 97-3-7(2)(b) (Rev. 2000), which was the statute in effect when Cooley committed the crime. *Cooley*, 803 So. 2d at 487 (¶4). This Court held that "the State elected to indict Cooley for aggravated assault with a deadly weapon. It was therefore incumbent upon the State to either prove that an instrument which by its very nature is a deadly weapon was used, or that an instrument was used which[] the jury, as finder of fact, could determine was a deadly weapon." *Id.* at 489 (¶12). Because "[t]here is no testimony that a hatchet *or any other deadly weapon was used*," *id.* at 489 (¶13) (emphasis added), this Court reversed and rendered a simple assault conviction. *Id.* at (¶15); *see also id.* at 488 (¶10) ("There is no evidence of the use of a deadly weapon to make this aggravated assault pursuant to section 97-3-7(2)(b).").

¶23. This language from *Cooley* shows that the State was held to prove the statutory element of proof (a "deadly weapon") and not the particular weapon used (the hatchet), even though the hatchet was identified in the indictment. *Id.*[3] In Smith's case, we find that the State was not required to prove that Smith was an "inmate" at the Lincoln County jail because all that section 47-5-193 requires is that Smith be either a "person or offender" in possession of a cell phone at the facility.

---

[3] In *Crosby v. State*, 856 So. 2d 523 (Miss. Ct. App. 2003), the Court stated that in *Cooley* "[t]he problem was the indictment alleged that the beating was done with a hatchet and no one found or identified a hatchet during testimony." *Id.* at 528 (¶9). This overstatement regarding this purported finding in *Cooley* is dictum. In *Crosby* the Court was not addressing whether the State was require to prove a non-statutory, factual element of an indictment. We are not bound by this statement. *Hughes v. Hosemann*, 68 So. 3d 1260, 1264 (¶11) (Miss. 2011) (observing that gratuitous remarks in a prior case, made outside the court's dispositive conclusion, were "mere dicta—surplusage, which *no court* is bound to follow").

¶24.    Smith also cites *Tyler v. State*, 69 Miss. 395, 11 So. 25 (1892), in support of his assertion that the phrase in the indictment "an inmate housed" was not surplusage and therefore must be proven as charged.  But the supreme court recognized in *Tyler* that "[w]here the entire averment, of which the descriptive matter is a part, is surplusage, it may be rejected, and the descriptive averment need not be proved." *Tyler*, 69 Miss. at 397, 11 So. at 25.  On the other hand, a factual averment in an indictment "must be proved as charged wherever, if the person, thing, act, place, or time to which it refers was struck from the indictment, no offense would be charged." *Id.*  In Smith's case, eliminating the phrase "an inmate housed" from the indictment would still state the offense charged, as follows:

> [O]n or about September 28, 2015, in Lincoln County, Mississippi and within the jurisdiction of this court, Rashad J. Smith did wilfully, unlawfully, feloniously and knowingly possess a cell phone, to wit: a Nokia Smartphone, black in color bearing the IMEI number 353047069216952 in the Lincoln County Jail, a correctional facility, in Lincoln County, Mississippi, at a time when [Rashad J. Smith] was an inmate housed in the aforementioned correctional facility, contrary to and in violation of Section[] 47-5-193 of the Mississippi Code of 1972, this being count two of the indictment. . . .

Thus, under *Tyler*, "an inmate housed" is surplusage and need not be proven. *Tyler*, 69 Miss. at 397, 11 So. at 25.

¶25.    Finally, we observe that the record reflects that the jury was specifically instructed on Count II as follows:

> RASHAD J. SMITH has been charged with unlawful possession of a cell phone in a correctional facility. If you find from the evidence in this case beyond a reasonable doubt that:
>
> RASHAD J. SMITH, on or about September 28, 2015, in Lincoln County, Mississippi, knowingly and feloniously possessed a cell phone, to-wit:  a Nokia smartphone bearing number 353047069216952, *while the said Rashad*

11

*J. Smith was an inmate housed in the Lincoln County jail*, a correctional facility; then you shall find the defendant "guilty of unlawful possession of a cell phone in a correctional facility."

However, it the State has failed to prove any one or more of the above listed elements of the crime beyond a reasonable doubt, then you shall find the defendant not guilty as to Count [II].

(Emphasis added). Having found that Smith was "guilty of unlawful possession of a cell phone in a correctional facility," the jury necessarily found that Smith was "an inmate housed in the Lincoln County jail," as instructed. *Evans v. State*, 226 So. 3d 1, 32 (¶83) (Miss. 2017) ("The jury is presumed to follow the instructions given by the trial court."). We therefore reject Smith's argument for this additional reason.

¶26.    In sum, because Smith's only challenge to the sufficiency or weight of the evidence is based upon three elements that we find the State was not required to prove, we find no merit in Smith's assertion that the trial court erred in denying his JNOV motion or, alternatively, his motion for a new trial.

### 3.    The Sufficiency or Weight of the Evidence

¶27.    In any event, assuming for the sake of argument that the State was required to prove that Smith was an "inmate" of the Lincoln County jail, we find that the State submitted sufficient evidence to support Smith's conviction and that the verdict was not against the overwhelming weight of the evidence.

### a.    The Sufficiency of the Evidence

¶28.    "The denial of a JNOV motion is reviewed de novo because it is a challenge to the legal sufficiency of the evidence." *Wilson v. State*, No. 2017-KA-01197-COA, 2018 WL

12

6498709, at *13 (¶57) (Miss. Ct. App. Dec. 11, 2018) (internal quotation mark omitted). "In reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* "This Court may only reverse a denial of a JNOV motion when, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id.*

¶29.     Smith relies on *Brooks v. Pennington*, 995 So. 2d 733 (Miss. Ct. App. 2007), in asserting that the State failed to prove he was an "inmate" at the Lincoln County jail. We find that the unique facts in *Brooks* make it inapplicable here. In *Brooks*, Willie Lee Brooks pleaded guilty to driving under the influence (DUI) and, in relevant part, was sentenced to serve six months in the Rankin County jail with five months of that time suspended. Brooks subsequently sued the Rankin County Sheriff and his bail bond surety for false imprisonment, among other claims, when Brooks was re-incarcerated upon his surrender by his bail bondsman when Brooks failed to pay his bond surety. *Brooks*, 995 So. 2d at 736-37 (¶¶1-4). At the time of his surrender and re-incarceration, Brooks had already served his DUI jail sentence. *Id.* at 736 (¶¶1-2).

¶30.     Among other issues, Brooks appealed the trial court's determination that the sheriff was immune from liability under the Mississippi Tort Claims Act (MTCA), specifically Mississippi Code Annotated section 11-46-9(1)(m) (Rev. 2002), which provides for immunity for any claim "[o]f any claimant who at the time the claim arises is an inmate of

13

any . . . jail . . . .'" Miss. Code Ann. §11-46-9(1)(m); *see Brooks*, 995 So. 2d at 736 (¶3). The Court addressed whether Brooks was an "inmate" at the time he was surrendered by the bondsman by addressing a number of duties the jailors' were required to satisfy before accepting Brooks as an inmate. *Id*. at 738-39 (¶10). These duties included the duty to "identify the defendant . . . [and to] use reasonable care to verify that the bond upon which the accused is being surrendered is presently valid and binding on the principal and surety." *Id*. The Court found that "there is a genuine issue of material fact as to whether [these] duties . . . were breached, as well as to Brooks's damages." *Id.* at 739 (¶11).

¶31. Whether Smith was an "inmate" in this case is wholly distinguishable from determining whether Brooks was an inmate based upon the special duties that apply only when an arrestee is surrendered by a bondsman, as the Court addressed in *Brooks*. Smith was not brought in through a bail bondsman; he turned himself in. Further, Smith, by his own actions, initially bypassed the booking-in process in a rush to "go upstairs," as we detail below.

¶32. Section 47-5-193 does not contain the word "inmate," thus we look to the ordinary usage of the word "inmate" in determining the sufficiency of the evidence as to Smith's inmate status here. *See Hall v. State*, 241 So. 3d 629, 631 (¶7) (Miss. 2018) ("This Court frequently looks to dictionaries to ascertain the meaning of a word in its common or popular sense."). "Inmate" is defined in The American Heritage Dictionary of the English Language as "a person confined to an institution, such as a prison or hospital." The American Heritage Dictionary of the English Language 930 (3rd ed. 1992). Based on our review of the record,

we find that the State presented sufficient evidence at trial for a competent jury to find that Smith was an "inmate"—i.e., "a person confined to" the Lincoln County jail.

¶33. Officer Larry Morris testified that Smith had "turned himself in" to the Lincoln County jail and was taken through locked doors to the booking area. Officer Morris further testified that before Smith could be processed through normal procedures, Smith grabbed a jail uniform off of a shelf along with a mat provided by the jail, went in another area, and changed into the jail uniform. Smith came out in his jail uniform with his jail-issued mat and told Officer Morris that he was ready to go "upstairs." Officer Morris told him that he first needed to be searched and that the booking process needed to be completed. At this point, Smith put his belongings on the counter, and the Nokia cell phone, among other items, fell out of the rolled up mat.

¶34. Although the booking process had not been completed, Smith was in a locked area, dressed in a jail uniform, and was not free to leave. Smith himself expressed that he was ready to go "upstairs." The jury reviewed the evidence presented at trial in its entirety and determined which facts were to be accepted as true or rejected as false. Viewing the evidence in the light most favorable to the prosecution, reasonable jurors could have found beyond a reasonable doubt that Smith was "confined" in the Lincoln County jail, thus meeting the "inmate" factual allegation in the indictment. *Gillett v. State*, 56 So. 3d 469, 505 (¶102) (Miss. 2010) ("The jury determines the weight and credibility to give witness testimony and other evidence. This Court may not pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of

15

belief.") (citation and internal quotation mark omitted).  We therefore find that the trial court did not err in denying Smith's JNOV motion.

### b.     The Weight of the Evidence

¶35.    Based upon the same evidence and testimony addressed above, we also reject Smith's alternative argument that the trial court erred when it denied his motion for a new trial because the verdict was against the overwhelming weight of the evidence.  "Appellate courts review a trial court's decision to deny a motion for a new trial utilizing an abuse-of-discretion standard of review. . . .  When considering a challenge to the weight of the evidence, the verdict will only be disturbed when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."  *Pruitt v. State*, 122 So. 3d 806, 809 (¶6) (Miss. Ct. App. 2013).  It is the jury's role to assess the weight and credibility of the evidence. *Id.* at 809 (¶8).  Taking the evidence that supports the jury's verdict as true as outlined above and reviewing it in the light most favorable to the verdict, we find that allowing the verdict to stand would not sanction an "unconscionable injustice." *Id.* at 809 (¶¶6-8).

### B.     Ineffective Assistance of Counsel

¶36.    As addressed above, the State did not allege that Smith was a habitual offender in the original indictment against him.  The State subsequently moved to amend the indictment to allege habitual-offender status.  At the June 2017 hearing on that motion, the trial court ruled on the record that the State met its burden for the indictment to be amended to include a habitual-offender sentencing enhancement. The record reflects, however, that no order was

16

entered amending the indictment to charge Smith as a habitual offender, and the defense did not object to the absence of such an order. Smith asserts that he received ineffective assistance of counsel because his lawyer did not object to the absence of a written order allowing the indictment to be amended as required by Mississippi Code Annotated section 99-17-15 (Rev. 2015),[4] resulting in a waiver of this issue on appeal. *See Reed v. State*, 506 So. 2d 277, 279 (Miss. 1987).

¶37. In *Reed*, the Mississippi Supreme Court held that "[t]he State is required to make sure that such an order [amending an indictment] appears in the record," and the failure to do so renders the amendment ineffective. *Id.*; *see also* MRCrP 14.1(b) (effective July 1, 2017) (indictment must contain penalty enhancement information or formal notice must be filed at least 30 days prior to trial or entry of a guilty plea). "[T]he defense is required to object to the absence of such order if it wishes to preserve th[e] point for appeal." *Reed*, 506 So. 2d at 279. For the reasons explained below, we deny Smith's ineffective- assistance-of-counsel claim without prejudice to his right to seek relief as to this claimed error in a properly filed petition for post-conviction relief. Miss. Code Ann. § 99-39-7 (Rev. 2015) (providing that when the petitioner's conviction and sentence have been affirmed on direct appeal, the petitioner must obtain leave of the Mississippi Supreme Court before filing a petition for post conviction relief in the circuit court).

---

[4] Section 99-17-15 provides that "[t]he order of the court for amendment of the indictment . . . shall be entered on the minutes, and shall specify precisely the amendment, and shall be a part of the record of said case, and shall have the same effect as if the indictment or other proceeding were actually changed to conform to the amendment." Miss. Code Ann. 99-17-15 (Rev. 2015).

17

¶38. This Court will "only consider an ineffective-assistance-of-counsel claim on direct appeal when: (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Nelson v. State*, 222 So. 3d 318, 322 (¶5) (Miss. Ct. App. 2017) (internal quotation marks omitted). Although Smith stipulates to the record's adequacy on this point, the State does not. As such, in deciding whether to go forward on this issue, this Court must determine whether the record affirmatively shows that Smith was denied ineffective assistance of counsel. *See Williams v. State*, 228 So. 3d 949, 952 (¶12) (Miss. Ct. App. 2017).

¶39. To establish his ineffective-assistance claim, Smith must "prove, under the totality of the circumstances that (1) his attorney's performance was defective and (2) the deficiency deprived the defendant of a fair trial." *Collins v. State*, 221 So. 3d 366, 372 (¶20) (Miss. Ct. App. 2016); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). In this regard, "a presumption exists that an attorney's performance falls within the wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic." *Braggs v. State*, 121 So. 3d 269, 273 (¶11) (Miss. Ct. App. 2013); *Collins*, 221 So. 3d at 372 (¶20).

¶40. With this standard in mind, our review of the record indicates that Smith's assignment of error on this point is beyond the contents of the record. We recognize, as the dissent points out, that even if Smith's counsel had objected to the lack of an order in the record allowing the amended indictment, this would likely have simply triggered a request that the trial court enter an order on the ruling it had already made. Smith would have still been

18

sentenced as a habitual offender. Under these circumstances, defense counsel's failure to object on this issue does not result in any prejudice to Smith, or deprive him of a fair trial. However, the decision as to whether to object or not constitutes a strategic decision fully outside the scope of the face of the record. We find that resolution of this issue is better left to be assessed on a complete record. Precedent reflects that on direct appeal, we will deny relief in those matters "where the record cannot support an ineffective assistance of counsel claim . . . [and we will] preserv[e] the defendant's right to argue the same issue through a petition for post-conviction relief." *Johnson v. State*, 196 So. 3d 973, 975 (¶8) (Miss. Ct. App. 2015) (quoting *McClendon v. State*, 152 So. 3d 1189, 1192 (¶12) (Miss. Ct. App. 2014)). For this reason, we deny Smith's ineffective-assistance claim without prejudice to his right to file a motion for post-conviction relief on this alleged error.

¶41. **AFFIRMED.**

    **BARNES, C.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

    **McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶42. Because I believe the record is sufficient at this point to resolve the question of whether there was ineffective assistance of counsel and does not require further exploration in the post-conviction process, I respectfully dissent in part. I agree with the majority's detailed conclusions regarding the sufficiency of the indictment and other issues in this case and therefore concur in part. Because the Supreme Court has made clear that the operative

19

inquiry is whether there was a fair opportunity to present a defense and no unfair surprise in sentencing,[5] even though the attorney may have failed to object, I do not think it results in prejudice to the defendant under the unique facts of this case. Yet I believe it could be per se ineffective assistance of counsel in other cases, which could likewise be dealt with on direct appeal.

¶43.    The Legislature affirmatively requires a trial court's order amending an indictment to be placed upon the docket, and it is clear from the statute's repeated use of the word "shall" that filing the order amending the indictment is a legislative commandment. "A basic tenet of statutory construction constrains us to conclude that, unlike the discretionary nature of 'may,' the word 'shall' is a mandatory directive." *Ivy v. Harrington*, 644 So. 2d 1218, 1221 (Miss. 1994). When the word "shall" is used, there is "no discretion"—it must be followed. *Id*. This is not a new commandment. "It is the law that an amendment to an indictment must be by order of the court which must precisely specify the amendment and the order must be spread on the minutes." *Thomas v. State*, 167 Miss. 504, 505, 142 So. 507, 507 (1932).

¶44.    As the majority correctly points out, failure to object that the order amending the indictment was not placed on the docket will result in waiver. "The State is required to make sure that such an order appears in the record and the defense is required to object to the absence of such order if it wishes to preserve this point for appeal." *Reed v. State*, 506 So. 2d 277, 279 (Miss. 1987). The waiver rule is well-established, and dates to at least 1973. *See Jones v. State*, 279 So. 2d 594 (Miss.1973) ("In the trial appellant waived any objection

---

[5] *Williams v. State*, 131 So. 3d 1174, 1177 (¶7) (Miss. 2014).

to the amendment, and made no point of the fact that the order authorizing the amendment was not entered upon the minutes of the court prior to actual making of the amendment," and so "waived his right to urge reversible error so far as the amendment is concerned."); *see also Sturgis v. State*, 379 So. 2d 534, 536-37 (Miss. 1980) (finding waiver when defendant failed to raise that the order was not filed as required by statute).

¶45. This brings us to the claim by the defendant that he was deprived of effective assistance of counsel. The State carried its burden to amend the indictment but failed to place it upon the docket as required by the Legislature and controlling precedent. Although this failure is error, nearly fifty years of precedent hold that the error is waived if the defendant does not object. Trial counsel did not object here, and as a result the majority correctly applies the precedent and rules that the issue is waived.

¶46. Where I must part ways is the analysis of whether this was ineffective assistance of counsel. The Supreme Court "has held that adequate notice is achieved through formal pleadings, which include the specific amendment to be offered and which are filed sufficiently in advance of trial to ensure that a defendant will have a fair opportunity to present a defense and will not be unfairly surprised." *Williams v. State*, 131 So. 3d 1174, 1177 (¶7) (Miss. 2014) (internal quotation marks omitted). "Whether notice of a possible enhanced sentence was given sufficiently in advance of trial should be considered on a case-by-case basis." *Id.* (internal quotation mark omitted). We have held that a post-conviction amendment to an indictment was valid because the defendant "had fair notice" and had filed a motion to amend, which detailed all of the offenses that made him eligible

21

for habitual-offender status. *Lyles v. State*, 212 So. 3d 879, 883 (¶17) (Miss. Ct. App. 2016).

¶47. From the record in this case, the defendant was put on notice of the amendment, and while it was error of counsel to not object to the failure to file the amendment, it does not result in prejudice. An objection would have likely just triggered the actual filing of the amended indictment, in turn satisfying *Williams* and *Lyles*. There was no prejudice in this case because of its unique nature, and not all cases will be the same; as the Supreme Court has reminded us. This issue is to be determined on a case-by-case basis.

¶48. Similar errors have resulted in reversal, such as in *Williams*, where "[t]he State's motion placed [him] on notice that it intended to utilize his prior drug conviction, but only for sentence enhancement," not "as a subsequent drug offender." *Williams*, 131 So. 3d at 1178 (¶10). "Because Williams was not given proper notice in advance of trial of the State's intent to seek enhanced punishment as a subsequent drug offender . . . we are compelled to reverse that portion of his sentence." *Id*. So while it may not have been ineffective assistance of counsel in this particular case to fail to object, there are many instances where it could be. A failure to object if the amendment of the indictment involved a name change, venue, a missing element, or as in *Williams*, doubled the potential sentence, could very well be ineffective assistance of counsel. It would be apparent from the face of the record and ripe for resolution on direct appeal.

¶49. We do not need to delay ruling on the issue for another day, and so I would find as a matter of law that while it may have been error by the trial counsel, it did not result in prejudice to the defendant as there was sufficient notice under the facts of this case.

22

**McDONALD, J., JOINS THIS OPINION.**